## WOOD v. HENRY et al.

Bidding off property at a sheriff's sale for State and county taxes binds the bidder, and in this sense the acceptance of the bid constitutes a sale. When perfected by the payment of the money and the execution of the deed, the transaction relates back and makes the sale effectual from sale day; but relatively to the right of the owner to redeem the land, the sale will not be considered as complete until payment of the purchase-money by the bidder, and the owner has twelve months from the time of such payment within which to tender the money to the purchaser for the purpose of redemption. The owner will not be considered in default for a failure to make such tender before the purchaser has fully complied with his bid by payment of the money. In a case where the sheriff immediately made a deed to the purchaser, and either actually or in effect loaned the latter the money, a different question would be presented.

Argued March 25, — Decided April 24, 1899.

Complaint for land. Before Judge Fite. Floyd superior court. August 25, 1898.

*M. B. Eubanks*, for plaintiff in error.
*Wright & Ewing* and *McHenry & Nunnally*, contra.

LEWIS, J. The defendants in error brought suit to the July term, 1897, of Floyd superior court, against the plaintiff in error, Charles D. Wood, to recover a certain tract of land in his possession. It appeared on the trial that the premises in dispute were levied on by virtue of a fi. fa. for State and county taxes, and by the sheriff were advertised and put up for sale on the first Tuesday in September, 1895, when they were "knocked off" to Charles D. Wood for the sum of $108. The fi. fa. was issued against T. B. and A. J. Higginbotham, administrators. An entry was made by the sheriff on the fi. fa., on May 12, 1896, to the effect that the property levied on was sold at sheriff's sale on the first Tuesday in September, 1895, to Charles D. Wood for $108. Then follows the sheriff's statement as to the application of the proceeds of the sale. After paying off the fi. fa. and costs of sale, the balance was applied to a fi. fa. for the year 1894, in favor of the State and county against the same defendants. Wood, the purchaser at the sale, did not pay any part of the purchase-money until the 12th day of May, 1896, on which day the sheriff executed to him a deed to the property; the deed bearing date May 12, 1896. The

plaintiffs in the present suit, who were the owners of the property, made tender of the amount paid by Wood, for the purpose of redeeming the property, within twelve months after Wood had paid the purchase-money to the sheriff and obtained the sheriff's deed; but the tender was made after the expiration of twelve months from the sale day when the property was bid off by Wood. There was a verdict for the plaintiffs, and the defendant excepts to the judgment of the court overruling his motion for a new trial. Exception is taken in the motion to the court's failure to charge the jury that the sale was complete when the purchaser's bid was accepted, and not from the time of the payment of the bid and the execution of the deed; and in charging the jury that, "nothing else appearing, the sale would not be complete until the bid was paid and deed made, and that the plaintiffs in this case had one year from the time of the payment of the bid by the defendant in which to redeem the property sold." Upon this assignment of error the plaintiff in error relies for a reversal of the judgment of the court below overruling his motion.

The defendants in error, in their petition, set forth their chain of title. It appears from their petition that the lots were assessed and appear on the State and county digest as the property of T. B. and A. J. Higginbotham, and that the execution was issued against T. B. and A. J. Higginbotham, administrators, and was levied on the lands as the property of defendants. It was not contended, however, that the taxes on these particular lands had ever been paid before the levy and sale. It was claimed in the petition that the levy and sale of the lands for taxes was void for the following reasons: (1) that there was no title to this realty in defendants in fi. fa. for any purpose whatever; (2) that the levy was so grossly excessive as to render a sale thereunder void; and (3) that there had been a tender by petitioners to the defendant of the full amount of principal, interest, penalty, and costs due him in consequence of the tax sale, which tender was made on the 12th day of March, 1897, and had ever since been continuous; that the defendant refused to accept the same, claiming that the time for redeeming the land by the owners had expired, and

that the property was his. Petitioners prayed that the defendant be required to make them a quitclaim deed to the property; that he surrender the sheriff's deed under the tax sale to be canceled; and that they recover possession of the property, together with rents and mesne profits. To this petition there was a demurrer filed on various grounds, but no error is assigned in the bill of exceptions on any judgment of the court disposing of this demurrer.

There was a conflict in the testimony, relating to the value of the property and the excessiveness of the levy, and also as to whether Wood, the purchaser at the sheriff's sale, had ever tendered to the sheriff the amount of the bid prior to May 12, 1896, when he paid the money and received the sheriff's deed. The jury returned a verdict for the plaintiffs below, and also found in their favor the sum of $35 as rent. There was sufficient testimony to sustain this verdict under the charge of the court. The controlling question, therefore, in this case is, when land is sold for State and county taxes, has the owner twelve months within which to redeem the same from the time the bidder at such sale pays the purchase-money, or should this time be computed from the day of the sale; that is, from the day when property was actually bid off by the purchaser? Section 909 of the Political Code declares, in substance, that whenever any land is sold by virtue of a tax execution issued under the code, the owner thereof shall have the privilege of redeeming the same within one year, by paying the purchaser the amount paid by said purchaser for said land, with ten per cent. premium thereon from the date of the purchase to the time of payment. It is insisted that the limitation period fixed by the terms of this section begins to run from the date of the sale, and that the sale is complete when the property is cried off to the highest bidder and his bid has been accepted by the sheriff, and that neither the payment of the purchase-money nor the date of the sheriff's deed necessarily controls the period as to when such a sale is complete in law. Ordinarily an acceptance of a bid made at such a sale by an officer is evidenced by his receipt of the purchase-money, and is immediately followed by his execution and delivery of a

deed to the purchaser. Section 907 of the Political Code declares that "Sales made under tax fi. fas. shall be made under the same rules governing judicial sales." In section 5466 of the Civil Code it is provided that if any person who may become a purchaser at such a sale shall fail or refuse to comply with the terms of the sale when requested so to do, he shall be liable for the amount of such purchase-money, "and it shall be at the option of such sheriff or other officer, either to proceed against such purchaser for the full amount of the purchase-money, or to resell such real or personal estate and then proceed against the first purchaser for the deficiency arising from such sale." It is quite manifest, therefore, that the purchaser acquires no title to the property simply and solely by virtue of the fact that it was knocked off to him as the highest bidder at the sale; for, if he refuses to pay, the sheriff at his option can resell the property. But how would he resell? Necessarily under the same process, not as the property of the bidder to whom it was knocked off, but as the property of the defendant against whom the execution was proceeding. The bidder is not entitled to his deed from the officer until he tenders payment of the amount of that bid, and until this is done he has no interest in the property, either legal or equitable. In the case of *Jones* v. *Thacker*, 61 *Ga.* 330, it was decided that: "Purchasers of railroad-stock at sheriff's sale are not entitled to demand of the sheriff the certificates of purchase without a tender of the purchase-money."

It is true this court has decided in the case of *Willbanks* v. *Untriner*, 98 *Ga.* 801 (5), that if a sheriff's sale was in other respects lawful, the mere fact that he gave the bidder to whom the property had been knocked off time within which to raise the money to pay for the property would not render it a credit sale, and that the bidder was liable as soon as the bid was accepted, and the sheriff's responsibility for the purchase-money immediately began. That ruling of the court was based upon error assigned in the charge of the court, to the effect that unless the money was paid or tendered on sale day the bidder would not be a bona fide purchaser, and that if it was agreed by the sheriff and the plaintiff in fi. fa. that the purchaser

could go and get the money and bring it back, the sale would be a credit sale and void. The court simply ruled in that case that this transaction between the officer and the purchaser did not render it a credit sale, and that the matter of indulgence was between these two and in no way affected the rights of other persons interested. There is nothing, however, in that case to indicate that had there been a continuous refusal of the bidder to pay the purchase-money, the sheriff would not have had a right to treat the title as never having passed out of the defendant in fi. fa., and to resell the same, as provided by section 5466 of the code, under the same execution, as the property of the defendant in fi. fa. In the case cited, however, the sheriff really treated the transaction as a cash sale, and of course was responsible to parties interested in the proceeds, just the same as if he had actually collected the amount in cash. Neither is the case of *Jinks* v. *American Mtg. Co.*, 102 *Ga.* 694, also cited by counsel for plaintiff in error, in point. In that case it appeared that the sheriff, on the day he exposed the property for sale, made an entry upon the execution, reciting the fact of the sale, by whom the property was bid off, and the amount it brought. It appeared that this amount was more than that due on the execution, and that the entry of the sheriff stood upon the record unimpeached and unchallenged. This court simply decided that such an entry was presumptively correct, and that it concluded the plaintiff upon the trial of an affidavit of illegality alleging payment. . Justice Cobb, in delivering the opinion of the court in that case, on page 696, distinctly recognized that if the entry was fraudulent or collusive, it could be attacked and set aside at the instance of any one who was the victim of such fraud or collusion; and he also recognized a right of the sheriff to resell the property at the purchaser's risk in the event he had not paid the bid.

In the case we are now considering, however, the facts are quite different. It appears that there was no entry or other official return made by the sheriff touching the sale of this property for taxes until May 12, 1896, some six months after the property was exposed by him for sale. His entry was then of the fact that the property was sold at sheriff's sale on the

first Tuesday in September previous. Of course the acceptance of the money and the execution of the deed to the purchaser had the effect of ratifying all that had been previously done by him, but it does not follow from this that the purchaser had a complete tax title to the property until he had paid the purchase-money and received the sheriff's deed. His rights in the property absolutely depended upon such payment or its tender. Section 909 of the Political Code gives to the owner of the land sold the privilege of redeeming it within one year by paying the *purchaser* the amount paid by him for the land with ten per cent. premium thereon from the date of the purchase to the time of payment. The statute therefore contemplates a redemption from the purchaser, not from the officer. But manifestly the law did not intend that the period of limitation as to redemption should begin to run before the purchaser had acquired some sort of title or interest in the land by virtue of the sale. Until his title had become complete he had acquired no interest in the property which was the subject-matter of redemption by the owner. Besides this, the statute stipulates that the owner shall have the right to redeem by paying the purchaser the *amount paid by said purchaser for said land,* etc. Manifestly it was not intended that the purchaser should be entitled to any such payment before he himself had paid out any money for the property. Any other construction of the legislative intent might subject the owner of the land, in his efforts to redeem the same from a tax sale, to the hardship of having his land again exposed for sale by the sheriff on account of the failure of the purchaser to pay the amount of his bid after he had received the same from the owner. We think it therefore quite clear that, relatively to the right of the owner to redeem the land, the tax sale will not be complete until the payment of the purchase-money by the bidder, and that the owner has twelve months from the time of such payment within which to tender the money to the purchaser for the purpose of redemption. Under the circumstances indicated at the conclusion of the headnote a different question would arise.

*Judgment affirmed. All the Justices concurring.*