## NEWSOM v. DADE COUNTY.

No. 10292.   FEBRUARY 22, 1935.

*Oliver R. Hardin,* for plaintiff.   *Rosser & Shaw,* for defendant.

ATKINSON, Justice.   A report of this case was made on its first appearance in this court.   *Newsom* v. *Dade County,* 177 *Ga.* 612 171 S. E. 145).   After the decision then rendered, the trial court allowed an amendment to the petition in which it was alleged:   "1. That Dade County has not paid the amount of its bid made at the sheriff's sale of petitioner's land, as alleged in the petition, and this plaintiff has one year in which to redeem his property after said county pays in the amount of its bid.   2. That the said county has not paid the State of Georgia the State's part of the taxes included in the fi. fas. by virtue of which plaintiff's property was sold, and plaintiff alleges that the redemption period does not expire until one year from the time said county pays the State its part of the taxes.   That it is encumbent upon a county, when a county purchases land at a tax sale, to pay the State that part of the taxes due the State, and the sale is not complete until the county has paid the State taxes, and the defendant in fi. fas. has one year in which to redeem his property from the time the county accounts to the State for its share of the taxes.   That said Dade County can not hold said land in trust for the State, and pay the State's taxes at such time as those in charge of the affairs of the county may see fit. That said sale of plaintiff's property is incomplete, and the period of redemption has not expired, and petitioner is entitled to the equitable relief prayed for in the original petition."   On motion the amendment was stricken, and the action dismissed.   The plaintiff excepted.

"Where real estate has been sold under any State, city, county, school, or drainage assessment tax fi. fa., the same may be redeemed

at any time within twelve months after the sale by the defendant in tax fi. fa. . . by paying the purchaser the amount paid by said purchaser for said land, with ten per cent. premium thereon from the date of the purchase to the time of payment." Ga. L. 1924, p. 48: Code Supp. (1926), § 1169; Code of 1933, § 92-8301. The ordinaries in counties in which the ordinary has control of the county roads and revenue "are authorized to purchase and hold in their official capacity any real property offered for sale by virtue of tax executions: provided, that said . . ordinaries . . shall only be authorized to bid on such real property when other bids do not cover the amount of said tax executions and costs: and provided further, that said . . ordinaries . . shall not bid more for such property than the amount of taxes and costs. Said county authorities, upon bidding in any property as herein provided, shall draw their warrant on the county treasurer to pay to the officers the costs due on said tax executions and accruing costs in effecting said sales." § 1178 (§ 92-8201). It is further declared that "owners of real property sold under and by virtue of tax executions, and bid in by the . . ordinaries . . as provided in the preceding section, shall have the privilege of redeeming said real property as in other cases." § 1179 (§ 92-8202). In regard to "other cases" as referred to in the preceding excerpt, it has been said, that, "relatively to the right of the owner to redeem the land, the sale will not be considered as complete until payment of the purchase-money by the bidder, and the owner has twelve months from the time of such payment within which to tender the money to the purchaser for the purpose of redemption;" and further that "the owner will not be considered in default for a failure to make such tender before the purchaser has fully complied with his bid by the payment of the money." *Wood* v. *Henry,* 107 *Ga.* 389 (33 S. E. 410); *Cason* v. *United Realty & Auction Co.,* 158 *Ga.* 584 (5) (123 S. E. 894); *Newsom* v. *Dade County,* 177 *Ga.* 612-614, supra. It follows logically that where the ordinary is the purchaser, the owner will not be in default for a failure to make tender before the ordinary has fully complied with his bid by the payment of the money. In making payment in such instances it has been held that the ordinaries "shall draw their warrant on the county treasurer to pay to the officers the costs due on said tax fi. fas., and accruing costs in effecting said sale." *Newsom* v. *Dade County,*

supra. However, payment of these charges would be only a partial payment. The levying officer is additionally entitled to the money for taxes, including the taxes and interest due the State, where the property has been bid off for the amount of costs and taxes. It is his duty to collect the amount of the bid and disburse it according to law. If the ordinary has not authority to issue his warrant on the county treasurer for taxes specified in the tax fi. fa., or there be other legal difficulty preventing him from paying the levying officer, that does not excuse payment as a condition to casting the owner in default with respect to redemption of the property. It simply means, payment not having otherwise been made, that if he has not complied with his bid by payment of the money the sale is not complete; and that the owner must not be considered in default. It is unnecessary to say more than refer to the plain language of the three sections of the Code quoted above and the decisions cited. The judge erred in striking the amendment and in dismissing the action on general demurrer.

*Judgment reversed. All the Justices concur, except Bell and Hutcheson, JJ., who dissent.*

BELL, Justice, dissenting. Section 1178 of the Civil Code of 1910 (Code of 1933, § 92-8201), as quoted in the majority opinion, was codified from the act of the General Assembly of 1892. Ga. L. 1892, p. 252. Before the passage of this act it had been held that an ordinary has no authority to purchase for the benefit of the county land sold for non-payment of the State and county taxes. *Wilkins* v. *Benning,* 51 *Ga.* 1. The manifest purpose of the act was to confer power upon the county authorities to purchase real property at tax sales when other bids do not cover the amount of the taxes and costs. The act applies only to real property. Counties are not in the business of buying and selling real estate, as other bidders might be. Before the passage of this law, property might be sold for less than its value and also for less than the amount of the taxes, with resulting loss to the county or to the State and county. Private purchasers are required to pay their bids in cash, and should have the money ready for this purpose. Under the ruling of the majority, a county could not exercise the power granted by this statute unless it had available in its treasury a sufficient amount of cash to comply with its bid by paying the same immediately to the levying officer, as private persons are expected to do.

Consequently a lack of funds in the county treasury would prevent the county authorities from bidding, and the purpose of the law would be defeated. The county can not become a purchaser unless there is no other bid sufficient to cover the amount of the taxes and costs; and with the county eliminated for want of funds, property of greater value than the amount of the tax fi. fa. might be sold for a sum insufficient to satisfy such liability. In that event, the statute would fail in its remedial purpose. Taxes are levied for specific purposes, and it may often happen that counties will not have a surplus of cash which could be applied toward the payment of its bids in such cases.

In the present case the tax fi. fas. amounted to about $30,000, and the execution included State and county taxes and also county-wide and local district school taxes. Was it the purpose of this law to require the county in such case to pay the amount of its bid in cash, to the end that the sheriff might at once distribute the taxes to the various officials and boards having an interest therein? The writer is of the opinion that such was not the purpose of the law, and that on the contrary the county, after purchasing the property and paying the costs and expenses of sale, should hold the title as trustee for the State and for the county-wide and local district school boards, with the duty of accounting for their portions of the taxes only after a redemption by the tax debtor, or, in case the property is not redeemed, after it shall have been converted into cash by the county authorities, or appropriated to county purposes. At the time of the passage of this law there was no special school tax such as we now have in some districts and counties, and it was hardly the intention of the legislature that the county should buy in the property for the benefit of itself and the State and immediately pay its bid in cash, so that the State may receive its portion, while the county abides a redemption or a disposition of the property, for reimbursement. The evident purpose of this law was to permit the county to complete its purchase and to obtain a deed merely upon payment of the costs and expenses of sale, with a liability to the State and other interested bodies according to the eventualities just referred to. The language of the statute is in keeping with this thought, and does not reasonably admit of any other construction. It prescribes the terms upon which the county may become the purchaser, by declaring that "said county authorities, upon

bidding in any property as herein provided, shall draw their warrant on the county treasurer to pay to the officers the costs due on said tax executions and accruing costs in effecting said sales." There would have been no necessity for this clause if the legislature had intended that the county should pay its bid in cash, because, even without such provision, the levying officer would have deducted the costs and expenses of sale before accounting for the proceeds. Furthermore, the statute, in declaring that the county authorities upon bidding in the property should draw their warrant for the officer's costs and "accruing costs" in effecting the sale, necessarily implies that no other act on the part of such authorities would be necessary. The mention of the one thing impliedly excludes others.

The Code declares that any person who becomes the purchaser at a sheriff's sale and fails or refuses to comply with the terms of the sale when requested to do so shall be liable for the purchase-money, and it shall be the option of the sheriff either to proceed against the purchaser for the full amount of the purchase-money or to resell the property and then proceed against such purchaser for any deficiency. Code of 1910, § 6071 (Code of 1933, § 39-1301). Is it conceivable that the sheriff should sue the county for the more than $30,000 which it bid for this property? If so, he has failed in his duty in this case, and ought now to bring suit, since it appears that he has executed and delivered his tax deed. But in case of such suit, is it not true that serious statutory and constitutional difficulties might be encountered? *Butts County* v. *Jackson Banking Co.*, 129 *Ga.* 801 (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244); *Barksdale* v. *Hayes*, 134 *Ga.* 348 (67 S. E. 852); Civil Code (1910), §§ 513, 6562. Again, if the suit would be good, is there not a breach of the sheriff's bond, for his failure to bring it? These and it may be other perplexing questions are necessarily involved in the ruling of the majority, and I can not believe that the legislature ever intended such a result.

In *Wood* v. *Henry* and *Cason* v. *United Realty Co.*, supra, the sales were not to counties, and the principles laid down in those cases are not applicable in the case at bar. Where the county drew its warrant to pay the costs of the officers and the expenses of sale and obtained a tax deed, the sale was complete so far as the taxpayer was concerned, and the period of redemption is not suspended because the county may otherwise have failed to pay the amount

of its bid in cash. For the reasons here stated, I dissent from the ruling of the majority, and from the judgment of reversal. Mr. Justice Hutcheson authorizes the statement that he concurs in this dissent.