## LAMB *et al.,* commissioners, *v.* TOOMER.

1. The act of October 12, 1885, "to fix the pay of official steno-
   graphic reporters," declares that these officers shall be paid for
   their services in "taking down the testimony in the trial of such
   criminal cases as are required by law to be reported," on the cer-
   tificate and order of the judge of the superior court. County
   authorities, such as boards of commissioners of roads and revenues,
   have neither the right nor the power to audit, order paid, or other-
   wise act upon orders thus granted. Consequently, the writ of
   *mandamus* does not lie to compel them to do any of these things.
   If a stenographic reporter has a valid order on the county treas-
   urer, granted by the judge of the superior court, he should pre-
   sent it to the treasurer, and upon payment being refused, may
   proceed by *mandamus* against him to compel payment. To make
   such an order absolutely compulsory on the treasurer, it would be
   safer and better for it to show on its face that it was granted for
   services rendered in taking down the testimony in the trial of
   criminal cases, and not generally "for services as official stenog-
   rapher."
2. Whether, under the above recited act, payment for "taking down"
   testimony does not of itself include compensation for "writing
   out," and if not, whether the judge of the superior court can
   allow anything for writing out,—*Quære?*

April 24, 1893. By two Justices. Argued at the last term.

Before Judge SWEAT.    Glynn county.    At chambers,
August 25, 1892.

SYMMES & BENNET, by J. H. LUMPKIN, for plaintiffs in
error.

LEON A. WILSON, SPENCER R. ATKINSON and HARRISON
& PEEPLES, *contra.*

LUMPKIN, Justice.

1. This was a proceeding by *mandamus* to compel the
board of commissioners of roads and revenues of Glynn
county to issue their warrant on the county treasurer
for the payment of a bill in favor of the official stenog-
rapher of the Brunswick circuit for "seven days services
as official stenographer of Glynn superior court, at $15
per day." Respondents demurred to the petition upon
two grounds, one of which was that "the petitioner sets

forth no cause, and alleges no matter that entitles him to the relief he prays." In the view we take of the case, the other ground of the demurrer need not be here stated. In our opinion, the demurrer should have been sustained on the general ground above quoted, and the petition dismissed.

The compensation of official reporters is provided for and regulated by the act of October 12th, 1885. (Acts of 1884–5, p. 130.) That act declares that "the pay of official reporters shall be fifteen dollars per day for taking down the testimony in the trial of such criminal cases as are now required by law to be reported, which sum shall be paid by the county treasurer, or other officer having charge of the county funds of the county wherein such criminal case shall be tried, on the certificate and order of said judge as to the number of days he has been employed." It will be conceded, we presume, that the words "said judge" mean the judge of the superior court. Under the plain terms of this act, county authorities, such as boards of commissioners, ordinaries, or others who have the control, management and supervision of the county finances, but who are not the actual custodians of the public funds, have nothing whatever to do with the compensation of official reporters for services rendered in the superior courts. The law devolves upon the presiding judge the duty of certifying as to the number of days the reporter has been employed in taking down testimony in criminal cases, and ordering the payment of his bill by the county treasurer, "or other officer having charge of the county funds." The county officials above mentioned have neither the right nor the authority to audit or order paid the reporter's bills, or to take any other action concerning the same. Indeed, they have no duty whatsoever to perform in this regard. It follows inevitably that they cannot be compelled by the writ of *mandamus*, or otherwise, to take

action of any kind in a matter of this sort. After the judge has granted to the reporter the order provided for by the act mentioned, that officer should present the order to the county treasurer for payment, and if the latter refuses to honor a proper order, the writ of *man-damus* will lie against him to compel its payment.

It will be noticed that the order granted in the present case was "for services as official stenographer." As every order drawn upon the public funds should be authorized by positive law, we think it would be safer and better for the judge's certificate and order to strictly follow the statute, and state explicitly the number of days the reporter was employed in "taking down the testimony in the trial of ......... criminal cases," instead of using the general terms above quoted. The statute does not authorize the judge to grant an order on the county treasurer for any services by the reporter other than those therein expressly mentioned.

2.・In the argument of this case, counsel on both sides discussed the question as to whether or not the words "taking down" as used in the act also included "writing out" the reporter's stenographic notes so as to render them intelligible to the ordinary reader. It was contended for the plaintiffs in error that the reporter should be paid only for the number of days he was actually employed while the court was engaged in the trial of criminal cases, and that it was his duty, in cases of conviction, to transcribe his notes without further compensation. On the other hand, it was insisted in behalf of the defendant in error that the judge had the authority to compensate the reporter for the number of days he might be employed in writing out his notes, although this work was done at a time, or upon days when the court was not trying criminal cases. The question thus made, however, is not now before us for adjudication. It does not appear, other than as shown upon the face of

the judge's order above quoted, for what services the order was granted, nor can we learn from anything else in the record whether the order was granted for services in writing out stenographic notes or not. We are therefore not at liberty to decide this question. We mention it for the reason that counsel discussed it, and also for the purpose of calling the attention of our brethren on the circuit bench to the matter, in order that they may consider it in granting future orders for the compensation of their official reporters.

*Judgment reversed.*