## STEWART *v.* THE STATE.

1. The writ of *certiorari* lies from all inferior judicatories, but the power to grant new trials is confined to the superior courts and the city courts specified in, and described by, paragraph 5, section 2, article 6 of the constitution of this State.
2. Courts established upon the recommendation of grand juries under the provisions of the act of October 19th, 1891, as amended by the act of December 23d, 1892, are not *"city courts"* within the description of such courts as expressed in the language, "and such other like courts as may be hereafter established in other cities," employed in the section of the constitution above cited.
3. The refusal by the judge of the superior court to entertain an application for a writ of *certiorari*, upon the sole ground that in a court of the character indicated at the beginning of the preceding note, a motion for a new trial had not been first made, was error.

March 23, 1896. Argued at the last term.

Petition for *certiorari*. Before Judge Hutchins. Jackson county. December 26, 1895.

Stewart was tried by jury in the city court of Jackson county, for abandoning his child, and was found guilty. He presented his petition for *certiorari* to the judge of the superior court, alleging that the verdict was contrary to law, evidence, etc., and assigning error upon the charge of the trial judge. The judge of the superior court refused to grant the *certiorari*, on the ground that a motion for a new trial should have been made and determined by the judge of the city court before the petition for *certiorari* was sued out. To this ruling defendant excepted.

*E. C. Armistead,* for plaintiff in error.
*R. B. Russell, solicitor-general,* contra.

ATKINSON, Justice.

The official report states the facts.

1. The city court for Jackson county is neither established *co nomine* by the constitution of this State, nor has there been a special act of the legislature establishing that court. We must therefore refer the fact of its existence to the act of the General Assembly approved October 9th, 1891 (Acts 1890-91, vol. 1, p. 96), it being entitled "an act to establish city courts in counties having a population of fifteen thousand or more, where the same do not now exist, upon the recommendation of the grand juries of said counties; to define the powers, mode of selecting officers, and jurisdiction of the same, and for other purposes;" as amended by the act approved December 23d, 1892 (Acts 1892, p. 107), by which it is provided that the power to establish such courts should be extended to the grand juries of counties having a population of ten thousand.

The plaintiff in error, having been indicted and convicted in the city court of Jackson county, filed a petition for *certiorari* to the superior court of that county, which was refused upon the special ground that he had not first moved for a new trial in the city court of Jackson county, the circuit judge holding that until this was done and the motion for a new trial disposed of, the plaintiff in error was not entitled to a writ of *certiorari.* The question is, whether in this class of courts the plaintiff in error had the right to take this case by writ of *certiorari* to the superior court for review, without first having moved for a new trial in the city court.

We think he was entitled to have his petition for *certiorari* considered. A city court of the character described by and established under the acts above referred to is essentially an inferior judicatory, and the express power is conferred by the constitution of this State upon the superior court to correct errors of inferior judicatories by writ of *certiorari.* See paragraph 5, sec. 4, art. 6; Code, §5143.

When this power was conferred the law impliedly imposed a duty upon the superior court to exercise it, and therefore the writ of *certiorari* was a remedy to which the plaintiff in error was entitled. We do not think the superior court, or the legislature for that matter, by express enactment could lawfully impose upon the exercise of this right of review from such courts the condition that parties dissatisfied with judgments therein should first move for a new trial; for the reason that city courts of that character having no power to grant new trials, the constitutional right to the writ of *certiorari* could not lawfully be burdened with the obligation upon the part of suitors to seek in a city court a relief which that court had no constitutional power to grant. Its judgment in the first instance is a final judgment of an inferior judicatory, and it is from such judgments alone that the writ of *certiorari* lies.

2. The power to grant new trials is confined, by the constitution of this State (see paragraph 6, sec. 4, art. 6), to the superior courts and such city courts as are recognized as city courts by the terms of the constitution itself. We do not think that courts such as are authorized to be established by the legislative enactments above referred to, are city courts within the meaning of that term as employed in the constitutional provision above mentioned, which reads as follows: "The General Assembly may provide for an appeal from one jury in the superior and city courts to another, and the said courts may grant new trials on legal grounds." It will be observed that it speaks of those courts as *the* superior and city courts; and when we come to inquire what city courts are embraced in the provisions of that clause of the constitution, we look elsewhere in the same instrument for a definition of the term *the* city courts. We find only one other reference to city courts in the constitution, and the city courts there mentioned are those of the cities of Atlanta and Savannah "and such other like courts as may be hereafter established in other cities."

Hence when we find the power to grant new trials limited to the city courts and the superior courts, and we find an express recognition of a certain class of city courts in the constitution, we are forced to the conclusion that the exercise of this power was limited by the constitution to the city courts thus expressly recognized. The power to grant new trials is not one of those powers incident to courts generally, but it is such a power as can be exercised only by those courts upon which the power is expressly conferred by the constitution. Had the constitution been silent upon the subject of new trials, the General Assembly would have had power to authorize the granting of new trials in any courts within this State; but where it undertakes to enumerate and describe the courts which shall exercise this special power of granting new trials, that enumeration and description is exhaustive, and the legislature cannot thereafter enlarge the list; and this upon the familiar principle, *expressio unius est exclusio alterius.* Upon the application of this general rule of constitutional construction, see *White* v. *Clements*, 39 *Ga.* 232; especially that portion of opinion appearing on pages 265 and 266.

In addition to the city courts of Atlanta and Savannah which are recognized by name, the constitution, by description, extends this power to certain other city courts, and the courts to which such power is thus extended are expressly "such other like courts as may be hereafter established in other cities." Two things are essential to the establishment of a court which will meet the requirement of the constitution in this respect. It must be a court modeled substantially upon the plan of the city courts of Atlanta and Savannah as they existed in those cities at the time of the adoption of the constitution. Identity in the minor details of practice, procedure or jurisdiction is not required, if in those respects they be substantially similar to the courts above referred to; but to the creation of such a court it is absolutely indispensable that it be given a situs within

the limits of an incorporated city. If it be located by the legislative act creating the court within an incorporated city, the legislature may confer upon it such jurisdiction beyond the limits of the city within the county as it may deem proper, but by the express language of the constitution it must be located within the corporate limits of a city. The mere fact that there may be an incorporated city within the limits of a county for which one of the courts of the character now under review is created, does not make it a city court within the meaning of this constitutional provision. There may be a half dozen different incorporated cities in one county. The legislature would have the power to create within the limits of each of such incorporated cities, if it saw proper to do so, a city court which would meet all of the requirements of the provision of the constitution now under consideration; but in order to the creation of such courts, the act creating them must locate them within the corporate limits of a city.

The act under which the city court of Jackson county was created is a general law authorizing the creation of city courts in counties having a population of ten thousand or upward, upon the recommendation of the grand juries, and this without reference to the existence or non-existence of even an incorporated town or village within the limits of such counties. The constitutional convention in dealing with this subject, we doubt not, acted advisedly. There was wisdom in the limitation imposed upon the power of the General Assembly to create indiscriminately courts of the character now under review. In cities where there is a considerable population and a considerable volume of business resulting from mercantile and other transactions, and which would largely contribute to the maintenance of such an institution, the expense of the court, as compared with its public utility, would not be so severely felt by those who were called upon to support it, as if it existed

in more sparsely settled communities where there was less litigation.

The legislature, in the exercise of the broad power conferred upon it by paragraph 1, section 1, article 6 of the constitution (Code, §5128), may create such courts in all the counties in the State and as many of them as it sees proper, but it cannot confer upon such courts the power to grant new trials, unless it complies with the constitutional requirements that such courts should be located in cities. It may confer upon such courts any jurisdiction not limited by the constitution to other courts. As to such matters of jurisdiction, the constitutional convention, having itself made an explicit declaration, will be presumed, by having conferred the right upon certain courts to grant new trials, to have denied to the legislature the power to confer a similar jurisdiction upon any other class of courts.

3. The circuit judge having declined to consider the application for *certiorari*, as we think improperly, placing his refusal upon a ground not involving the merits of the plaintiff's case, we will not scrutinize closely or critically the petition for *certiorari* with a view of determining whether or not the conclusion reached by him was right, although assigning a wrong reason therefor. On the contrary we think it safer and better that he should first be called upon to exercise the original jurisdiction conferred upon him by law in the premises. Let the judgment of the court below be                    *Reversed.*