SISTER FELICITAS *v.* HARTRIDGE, solicitor-general, relator.

1. Except as to the part dealt with in the second division of the opinion, the act of the General Assembly of this State approved August 21, 1916 (Acts 1916, p. 126), entitled an act to provide for the inspection by State authorities of private institutions, etc., was properly held not to be unconstitutional upon the grounds urged in the attack made upon various sections of the act.
2. So much of the fourth section of the act just referred to as declares it to be the duty of the grand jury to specially present the owner, keeper, custodian, or manager of such institution, in certain cases there stated, contains matter different from what is expressed in the title of that act, and is therefore unconstitutional and void.
(a) But the void part of section four may be segregated and eliminated without destroying the entire act, as it is not so essentially connected with the primary principle and purpose of the law as to render its elimination destructive of the whole.
(b) The part of the act declared unconstitutional and void did not affect the issue involved in the instant case, nor the judgment rendered by the court.

No. 790. FEBRUARY 24, 1919.

Attachment for contempt. Before Judge Meldrim. Chatham superior court. December 27, 1917.

*Anderson, Cann, Cann & Walsh, King & Spalding, Augustin Daly,* and *L. L. Battey,* for plaintiff in error.

*Walter C. Hartridge, solicitor-general,* contra.

BECK, P. J. Pursuant to the provisions of an act of the General Assembly of this State, entitled an act to provide for the inspection by State authorities of private institutions, etc., approved August 21, 1916 (Acts 1916, p. 126), a committee of five members of the grand jury of the October term, 1917, of Chatham superior court, called at the Convent of the Sisters of Mercy, and at the Convent of the Franciscan Sisters, for the purpose of making the inquiry and investigation provided for in said act. Mother Clare, in charge of the Convent of the Sisters of Mercy, and Sister Felicitas, in charge of the Convent of the Franciscan Sisters, declined to permit the committee to make the investigation desired. This committee, through the grand jury, reported the refusal to the superior court. The solicitor-general of the Eastern judicial circuit filed a petition to the superior court, reciting the facts just set forth, and setting up the contention that the refusal by Mother Clare and by Sister Felicitas constituted a contempt of court, and prayed that an order be passed requiring

the respondents to show cause why they should not be adjudged guilty of contempt and be punished therefor; and an order to this effect was granted. Both respondents made answer to the rule, setting up, first, that the institution over which they presided was not within the purview of the act above referred to, for reasons set forth in the answer; and they attacked the act on numerous constitutional grounds. The judge of the superior court, after hearing evidence, discharged the rule as to Mother Clare, but held that Sister Felicitas was guilty of contempt, and imposed a fine. To this ruling Sister Felicitas excepted and brought the case by writ of error to this court for review.

1. The judge who heard the issues made by the rule and the answer, in passing upon the case and rendering the judgment complained of, delivered an opinion in writing, which (omitting only certain general observations made in the course of the opinion which do not materially affect the decision and discussion of the issues involved) is as follows: "It appears that the respondent is the head of a private institution known as St. Francis Convent. That that institution is not only a convent but is also a 'private orphanage.' That no person is kept in confinement in the convent, and that the orphanage, which is for colored orphans, is governed by the usual and customary rules and regulations that obtain in orphan asylums. In a wide sense, the orphans are persons who are kept in confinement, and to this private orphanage the act approved August 21, 1917, applies.

"The constitutionality of the act is attacked on about forty grounds, great and small, general and special. I do not deem it necessary to consider in detail all of these grounds. They can be grouped together under three heads, of form, substance, and procedure. In the group 'form' falls the objections based on Code sec. 6437, dealing with one subject-matter. Under this general ground there are six subdivisions. The first contention is that the act provides for inspection 'by State authorities,' and that five members of a grand jury are not State authorities. The grand jury represents the State. It acts 'in the name and behalf of the citizens of Georgia.' Its action is taken to maintain the peace, good order, and dignity of the State. The county is only a subdivision of the State. In the enumeration of county officers grand juries are not included. There may be county authorities and

State authorities; but when the grand jury acts in matters of general welfare it is a State authority, and a committee from that body can be empowered by the State, acting through its legislature, to make inspections 'of every private institution in which citizens of Georgia and other States are kept in confinement.' I can not assume that the grand jury would act without legal evidence and the concurrence of at least twelve of its members.

"The second and third contentions are that the act provides for the examination and questioning of the inmates of these institutions, and that the caption provides only for inspection. Inspection and examination are synonymous terms, or are very nearly so; and if in order to make an inspection it is necessary to question an inmate, it is quite clear that the power given to inspect would include the power to question. The power being given, the usual and ordinary means for the exercise of the power are implied. Inspection, examination, questioning are all related, and are but the means employed to reach a given end, that is, the inspection of institutions in which citizens of Georgia and of other States *are kept in confinement.*

"The fourth and fifth contentions deal with the demand for release of an inmate and special presentment, while the sixth is a resumé of the first, second, third, fourth, and fifth contentions.

"The great purpose of the act is inspection of private institutions where citizens are kept in confinement. Any instrumentality in aid of this purpose is not a subject-matter different from the title.

"In the group of 'substance' falls the objection, with its several subdivisions, based on Code sec. 6358, dealing with protection to persons and property; the objection based on Code sec. 6359, dealing with due process of law, with a like number of subdivisions; the objection based on Code sec. 6272, dealing with searches and warrants, with its three subdivisions; and the objection based on Code sec. 6700 (the 14th amendment of the constitution of the United States), dealing with citizenship, with its eight subdivisions. Wherein this act breaks down the constitutional barrier which impartially and completely protects the person and property of the respondent, I am at a loss to see. That the respondent may be deprived of her liberty and property is true, but it is not true that such deprivation will be without due process of law. The

legislature has the right to require inspection of institutions where citizens are kept confined. When the right to inspect is denied, there is certainly no violation of the due-process clause of the constitution because the inspectors, a committee from the grand jury, report to that body the result of their inspection. The vice in the respondent's contention is in assuming that the report or action of a committee from the grand jury is a final process by which the respondent is, without due process of law, deprived of her liberty or property. No deprivation of any kind can arise until after the grand jury shall have specially presented the respondent, and then only after a fair and impartial trial a jury of her peers has found her guilty of the offense charged against her in the presentment.

"As to unreasonable searches, it is safe to say that no search is required to be made under the act. Certainly I can not read into the act words that are not there. There is nothing in the act which can be construed as authority for a committee from the grand jury of this State to make an unreasonable search of this orphanage. The legislative authority is sufficient to authorize the inspection of private institutions where citizens are kept in confinement.

"I do not see the application of the 14th amendment to the constitution of the United States to the instant case. For the reasons heretofore given, this State does not by the act in question abridge any privilege or immunity of the respondent, deprive her of any right without due process of law, or deny her the equal protection of the laws. The respondent erroneously assumes that the committee from the grand jury become vested under the act with all the powers of the grand jury and the trial court and jury, and that in this way the respondent is deprived of certain privileges and immunities, such as right of appeal, cross-examination, etc. The committee from the grand jury has no such powers, and can not have.

"In the group of 'procedure' falls the objection based on Code sec. 6361, dealing with accusation and list of witnesses; the objection based on Code sec. 6497, dealing with the judicial powers vested in certain courts; and objection based on Code sec. 6391, dealing with uniformity of laws. Under this last objection are two subdivisions. The vice of this group is that the respondent assumes

a fact not contemplated in the act, and that is, that the grand jury will not furnish the accused on demand, at the proper time, a copy of the accusation and list of witnesses. It is also vicious in that it confuses the ascertainment by the committee of the fact that a person is illegally deprived of liberty, with the final determination, after presentment by the jury of the county, of the guilt or innocence of the respondent. The objection that the act does violence to the uniformity-of-laws clause, for the reasons assigned, is not convincing. The same vice here again appears, and that is, in assuming that the grand jury and a committee from that body are one and the same, and that the grand jury has surrendered all its rights and powers to a committee. There is no reason suggested why, after the report has been made, the proceedings before the grand jury will not be the decent and orderly investigation, hearing of evidence, and presentment required by law. So far as the grand jury or any committee or member of that body being required to keep secret all matters and things which may come to their knowledge, and so far as relates to the publication, at the expense of the county, of the names of dissatisfied inmates, these are matters which concern the jurors and the county, and in which it does not appear that the respondent is interested. . . Before an act of a co-ordinate department of the government can be declared unconstitutional, the conflict between the act and the fundamental law must be clear and palpable. The solemn act of the General Assembly will not be set aside in a doubtful case; and before annulling an act passed upon as constitutional by both the legislative and executive departments of the State government, the judicial department should be clearly satisfied of its unconstitutionality. Even if the act in question were contrary to the spirit of the constitution, that of itself would not be sufficient to invoke judicial interference. The courts cannot declare acts unconstitutional except where they are in violation of express words of the constitution; otherwise there would be a substitution of the judgment of the court for the will of the legislature, and this cannot be.

"The unconstitutionality of the act has not been made to appear so clear and palpable as to justify the annuling of it, and therefore it is adjudged that the respondent, Sister Felicitas, is in contempt, and judgment will be entered accordingly."

2. The foregoing opinion sufficiently discusses the objections urged to the constitutionality of the act in question, states the controlling issues made in the case, and announces sound principles of law applicable thereto, except as to that, portion of the criticism directed against the part of the fourth section of the act which provides, that, "in case that such demand for the release of said person is not promptly complied with upon the demand of the committee, it shall be the duty of the grand jury to specially present the owner, keeper, custodian, or manager of such institution, in a special presentment for false imprisonment, and for holding persons to involuntary servitude, in violation of the constitution of the State of Georgia, and of the United States." The objection to this provision is not specifically discussed in the opinion which we have set forth, and is not dealt with in that opinion except in the general way where it is held that the act is not unconstitutional. If it was intended in this opinion to hold that that part of the act which we have just referred to is not unconstitutional, a conclusion is reached in which we cannot concur; but we will not reverse the judgment of the court below because of the ruling as to this part of the legislative act under review, for, in passing upon the issues made before him in the instant case and in reaching the decision which we are upholding, the court was dealing with those parts of the act which related to inspection strictly, as appears from the statement of facts. But we cannot concur in so much of the opinion as holds, apparently, that the provision of the act which makes the refusal of demands for the release of persons a criminal offense is not objectionable on the ground that it contains matter different from what is expressed in the title of the act, in violation of the provision of the constitution (Civil Code, § 6437) inhibiting the passage of a law containing matter "different from what is expressed in the title thereof." The title of the act is in the following language: "An act to provide for the inspection by State authorities of every private institution in which citizens of Georgia and of other States are kept in confinement by sanitoriums, private hospitals, private asylums, private orphanages, Houses of the Good Shepherd, convents, monasteries, or any other institution under any other name, maintained by private individuals, corporations, churches, or charitable institutions, within the State of Georgia, and for other

purposes." We do not think this title can receive any fair construction which would make it sufficiently indicate that the part of the act which we have pointed out does not contain matter different from the title. The title itself indicates that it is the purpose of the act to provide for the "inspection" of certain institutions; and no other term is used to define the general scope of the act, except the words "and for other purposes," and this last expression can cover only those purposes which are germane to the main express purpose of inspection. If the express purpose of the act had been "to regulate" institutions of the kind named, possibly it might have been, in order to make the regulation effective, no violation of the clause of the constitution now being considered to have provided that in certain contingencies the managers or those in charge of such institutions might be indicted, as an indictment might, in case of violation of the regulation prescribed, be a method of making effective the regulations; but where "inspection" is the sole specific purpose indicated, we cannot see any indication, in the term employed, of a purpose to include in the act provisions for presentment by the grand jury and a prosecution. But we are further of the opinion that that part of the act which we have held to be unconstitutional does not so affect the entire legislative scheme as embodied in this act as to render the entire act void. We are of the opinion that the provisions as to prosecution and presentment can be segregated and eliminated from the act, and the main legislative scheme be given force. Accordingly we concur in what was said in the opinion of the trial judge which we have quoted, and adopt the decision contained in his opinion as the decision of this court upon the issues made by the contentions of the plaintiff in error based upon constitutional grounds, except as regards that part of the act contained in section four, providing for prosecution and presentment by the grand jury. Therefore the judgment of the court below will stand unaffected by the ruling which we have made in the second division of the opinion, as that part of the act held to be unconstitutional was not involved in the proceedings which resulted in the judgment complained of.

*Judgment affirmed. All the Justices concur.*