## ROGERS v. CITIZENS BANK OF DOUGLAS.

1. The act of the General Assembly approved October 19, 1891 (Acts 1890-91, p. 96), as amended by the act approved December 23, 1892 (Acts 1892, p. 107), provides that "upon the recommendation of the grand jury of any county having a population of ten thousand or more, where a city court does not now exist, there shall be established a city court for said county" Civil Code of 1895, § 4270; Penal Code of 1895, § 777. The failure of the compiler of the Code of 1910 to embrace therein the provisions of the act of 1891, as amended by the act of 1892, supra, did not, in the absence of conflicting statutes in that code, amount to a repeal by implication of the act referred to, and that act, as amended by the General Assembly, is still the law of Georgia.

   (a) The act approved October 19, 1891, supra, conferred upon the judge of a court established under the act the power to grant new trials, and

provided for direct writ of error from such court to the Supreme Court. These provisions of the act were held invalid in *Stewart* v. *State*, 98 *Ga.* 202 (25 S. E. 424), and in *Western Union Telegraph Co.* v. *Jackson*, 98 *Ga.* 207 (25 S. E. 264). *Held*, that the invalid portions of the act of 1891 may be segregated and eliminated without destroying the main purpose of the act; such invalid portions not being so essentially connected with the primary principle and purpose of the law as to render their elimination destructive of the whole.

2. Under the act approved October 19, 1891, supra, as amended by the act approved December 23, 1892, supra, the grand jury of any county having a population of ten thousand or more, in which a city court did not exist at the time of the adoption of the act and in which none exists at the time the grand jury acts, may, by recommendation, establish a city court for said county.

3. The act of 1891, supra, in so far as it applies to the county of Coffee, was not repealed by the acts of 1895 and 1897, creating, respectively, a city court of Coffee county and a city court of Douglas in the county of Coffee; it appearing that the act of 1895, creating the city court of Coffee, was expressly repealed by the act of 1897 (Acts 1897, p. 524), and that the act of 1897, creating the city court of Douglas, was expressly repealed by the act of 1917 (Acts 1917, p. 236).

4. The act of 1891, supra, prescribes no particular form of recommendation to be made by the grand jury; and the recommendation of the grand jury of Coffee county, establishing a city court for said county, having specifically referred to the act, the mere omission from the recommendation of specific reference to the portions of the act conferring jurisdiction in criminal cases upon the court thus established will not invalidate the recommendation.

5. With respect to the receiving and paying out of the moneys of Coffee county, the county depository created by the act of 1916 (Acts 1916, p. 394) occupies precisely the same position as county treasurer. The salary of the judge of the city court established by the recommendation of the grand jury of Coffee county under the provisions of the act of 1891, supra, was fixed by law and made payable out of the county treasury in monthly installments. It was therefore unnecessary for the judge of the city court to have his claim for salary audited and a warrant on the county treasurer issued therefor by the board of county commissioners.

6. The city court of Coffee county, established by recommendation of the grand jury of said county at the February term, 1918, of the superior court of said county, was, under the allegations of the petition, a legally established court, and the judge thereof was entitled to the salary fixed by the recommendation of the grand jury; and the court erred in dismissing the petition on demurrer.

　　　　　　　　No. 1371. DECEMBER 9, 1919.

Petition for mandamus. Before Judge Summerall. Coffee superior court. March 15, 1919.

*L. E. Heath, Wilson & Bennett,* and *Parks & Reed,* for plaintiff. *Dickerson & Kelley* and *R. B. Chastain,* for defendant.

GEORGE, J.   In February, 1919, J. J. Rogers filed a petition for mandamus against the Citizens Bank of Douglas, the depository for the County of Coffee, to require the bank as such depository to pay to the petitioner his salary as judge of the city court of Coffee county.   To the petition a demurrer was filed, and it was agreed. by counsel for both parties that the judge of the superior court should determine the demurrer in vacation.   Upon consideration the demurrer was sustained and the petition dismissed.   The petitioner excepted.

The petition alleged that "by due and legal action of the grand jury of Coffee county," on February 14, 1918, and at and during the February term, 1918, of the superior court of said county, the city court of Coffee county was established "under the provisions of the laws of Georgia contained in sections 4831 (a) to 4831 (nn) of Park's Annotated Code of 1914;" that the salary of the judge thereof was fixed at $1200 per annum, to be paid monthly in installments out of the treasury of the county; that the petitioner was, by the Governor of the State, appointed judge of said court, and received his commission as such in due form on March 21, 1918; that he immediately qualified by taking the oath of office, and "entered upon the discharge of the duties of said office, and petitioner has since continued and still continues to hold said office and discharge the duties thereof;" that his appointment as judge of said court was confirmed by the Senate at the regular session of the General Assembly held in the year 1918; that on December 23, 1892, and on February 14, 1918, on which latter date the recommendation of the grand jury was received, published, and ordered admitted to record by the judge of the superior court of Coffee county, said county had a population in excess of 10,000, and that no city court of any description was in existence in said county on either December 23, 1892 or February 14, 1918; that the General Assembly, by an act approved August 2, 1916, abolished the office of treasurer of Coffee county, and, by an act approved August 19, 1916, created the Citizens Bank of Douglas the county depository in and for Coffee County, for the purpose of receiving and disbursing all county funds as theretofore received and disbursed by the county treasurer; that since the passage of the act last referred to all the public funds of the County of Coffee have been and are now in the custody and control of said depository; that taxes were

levied in the year 1918 by the duly constituted authorities of Coffee County for the payment of the court expenses of said county; that the funds arising from such levy are now held by the said depository and are available under the law for the payment of the petitioner's salary as judge aforesaid; that the petitioner has made demand upon the depository for the payment of his salary as such judge, and said depository has declined to pay his salary as such judge, or any part thereof; and that there is now due the petitioner as salary from the date of his qualification as such judge to December 1, 1918, the sum of $836.66.

The demurrer questions the authority of the grand jury of Coffee county to establish a city court for said county by a recommendation of its body, upon several grounds. The General Assembly, by an act approved October 19, 1891, provided "that upon the recommendation of the grand jury of any county of this State, having a population of fifteen thousand or more, where the same does not now exist, there shall be, and the same is, hereby established a city court for said county." The second section of the act provided that the grand jury shall fix the salary of the judge of the court. Acts 1890-91, p. 96. By an act approved December 23, 1892, the foregoing act was amended by striking the words "fifteen thousand" and inserting in lieu thereof the words "ten thousand," so that city courts "may be hereafter established in counties having a population of ten thousand or more, whenever the grand juries of such counties may so recommend as provided by said act." Acts 1892, p. 107. The act of 1891, as amended by the act of 1892, supra, was codified in the Code of 1895. Civil Code of 1895, §§ 4270-4309; Penal Code of 1895, §§ 777-790. The act was omitted from the Code of 1910, but is contained in Park's Annotated Code of Georgia (1914). Park's Annotated Code has not been adopted by the legislature, but by resolution of the House of Representatives and the Senate its publication was approved and its use commended to the courts, the officers of the State, and the public. Georgia Laws 1914, p. 1242.

1. It is insisted that the act of 1891 as amended by the act of 1892, supra, was repealed by its omission from the Code of 1910, and that the act adopting the Code of 1910, and especially the repealing clause thereof, operated to repeal all laws relative to grand-jury city courts. It is further contended that the codi-

fier purposely omitted the act in question from the code, because certain portions thereof had been declared unconstitutional. This court in *Stewart* v. *State*, 98 *Ga.* 202 (25 S. E. 424), and *Western Union Telegraph Co.* v. *Jackson*, 98 *Ga.* 207 (25 S. E. 264), held that the provisions of the act of 1891 which authorized the judge of a court created under that act to grant new trials, and which provided that writs of error should lie directly to the Supreme Court, were unconstitutional. These decisions left the act of 1891 otherwise intact, and expressly ruled that certiorari would lie from a court created under the act to the superior court. It is a well-established principle that unless the main purpose of the statute is affected by the unconstitutionality of a particular provision, the whole act is not thereby defeated. *Carswell* v. *Wright*, 133 *Ga.* 716 (66 S. E. 905) ; *Pearson* v. *Bass*, 132 *Ga.* 117 (63 S. E. 798) ; *Sister Felicitas* v. *Hartridge*, 148 *Ga.* 832 (2), 837 (98 S. E. 538). The provisions of the act in question which were held to be invalid may be eliminated without destroying the entire act, since such invalid provisions are not so essentially connected with the primary principle and purpose of the law as to render their elimination destructive of the whole. The fact that this court held certain provisions of the act unconstitutional, which provisions, as we have seen, may be segregated and eliminated without destroying the main purpose of the act, does not authorize the assumption that the codifier of the Code of 1910 considered the act repealed, or that the General Assembly in adopting the Code of 1910, from which the act of 1891 was omitted, intended to repeal the same. The mere omission from the Code of 1910 of the act in question can not by any fair process of reasoning be said to manifest an intention of the legislature in adopting that code to repeal the act. The sound rule upon the point here discussed is announced in *Georgia Railroad &c. Co.* v. *Wright*, 124 *Ga.* 596, 608 (53 S. E. 251) : "While every constitutional provision in the code became law by virtue of the adopting act, nevertheless a valid statute omitted from the code, either purposely or by oversight, is still the law, unless expressly or by necessary implication repealed by some provision of the code or a subsequent statute." The act of 1891 is not repealed expressly or by necessary implication by any provision of the Code of 1910, or by any subsequent legislative act. It is therefore still in force. If we were to indulge in

speculation it might be said that Judge Hopkins, in preparing the Code of 1910, considered the act of 1891 as a special law, recognizing the ruling made by this court in *Thomas* v. *Austin,* 103 *Ga.* 701, 705 (30 S. E. 627), to that effect. The code was intended to embrace the general laws of force in this State. The legislature in adopting it did not intend to repeal laws which might be put in force by the recommendation of the grand juries of the several counties of the State. Attention is called to the fact that both the county-court act and the grand-jury city court act were omitted from the Code of 1910. The resolution adopted by the Senate and House of Representatives on August 17, 1914, authorizing Mr. Park to publish his Annotated Code recites in part as follows: "Whereas, a number of important statutes were omitted from said code [Code of 1910], which are still of force." By this resolution, passed four years after the adoption of the Code of 1910, the General Assembly notes the practical impossibility of making a perfect codification of the laws of force in this State, and that without calling in question the ability and fidelity of the codifiers.

2. It is contended that the recommendation of the grand jury is void, because, when the Code of 1895 was adopted there was in existence a city court of Coffee county. The reply to this is that the act of 1891 itself was the valid statute, not the codification of it. The act as amended provides that "upon the recommendation of the grand jury of any county having a population of 10,000 or more, where a city court does not now exist, there shall be established a city court for said county." A fair interpretation of the legislative intent is that the grand jury of any county having the requisite population, in which a city court did not exist at the time of the adoption of the act, and where none exists at the time the grand jury acts, may by recommendation establish a city court for said county. See *Thomas* v. *Austin,* supra. It is alleged that no city court existed in Coffee county at the time of the passage of the act, the amendment in 1892, and at the date of the recommendation of the grand jury establishing a city court for said county. This is sufficient, and the court was therefore legally established so far as the objection here considered is concerned.

3. It is also contended that the recommendation of the grand jury of Coffee county is void, because the act of 1891 was repealed,

so far as it applies to Coffee county, by the acts of 1895 and 1897, creating respectively the city court of Coffee county and the city court of Douglas in the county of Coffee. The act of 1895, creating the city court of Coffee, was expressly repealed by the act of 1897. Acts 1897, p. 524. The act of 1897, creating the city court of Douglas, was expressly repealed by the act of 1917. Acts 1917, p. 236.

4. Again, it is contended that the recommendation of the grand jury establishing the city court of Coffee county is void, because the recommendation itself referred to the provisions of law as codified in sections 4831 (a) to 4831 (nn) of Park's Annotated Code of 1914, omitting any reference to sections 777 to 790 of the Penal Code of 1895. The argument is that the recommendation of the grand jury put into effect a court having civil jurisdiction only, and that therefore said recommendation established no court, for the reason that the court which the grand jury was authorized to establish by recommendation was a court having both criminal and civil jurisdiction, as provided in the act of 1891. The petition does not set forth the form of the recommendation as made by the grand jury of Coffee county at the February term, 1918, of the superior court of that county. It alleges that by "due and legal action of the grand jury" the city court of Coffee county was established, under the provisions of Park's Annotated Code, 1914, to which reference has been made. On this point we think it sufficient to call attention to the fact that no particular form of recommendation is prescribed by the act of 1891; that the jurisdiction of the court to be established upon the recommendation of the grand jury in a county of the requisite population is fixed in the act itself by reference to the act of 1885, creating the city court of Macon, and that clearly the grand jury intended to recommend what is known as the grand-jury city court as provided by the act of 1891, and the acts amendatory thereof.

5. Finally, the demurrant insists that the plaintiff in error does not allege that it had refused to pay a county warrant issued by the county commissioners, and that therefore the petition was properly dismissed. By the act of 1916 the legislature abolished the office of treasurer of Coffee county, and at the same time created the defendant bank the county depository, "for the purpose of receiving and disbursing of all county funds as heretofore received and disbursed by its treasurer." Acts 1916, p. 394. The

act prescribed the form of warrant to be drawn on the depository by the county commissioners. It was further provided, "Said depository shall pay out all county funds only upon a regular county warrant, except in cases where the judge of the superior court of the county has jurisdiction and issues an order upon the county depository, and in that event said depository must secure a county warrant for its record." The exception made in the act has no application here, and the question is whether the plaintiff can demand payment of his salary except upon a warrant regularly issued by the county commissioners of Coffee county. The act creating the board of county commissioners of Coffee county provides that the board shall "have and exercise all powers theretofore vested in the ordinary of said county when sitting for county purposes." Acts 1918, p. 414, § 13. The authority of the ordinary over county matters includes "examining, settling, and allowing all claims against the county." Civil Code (1910), § 4796. The commissioners of Coffee county have exactly the same authority over the settlement and allowance of claims against the county as the ordinary has under the code section, supra. The act of 1891, under which the city court of Coffee county was created, by express reference makes the act of 1885, creating the city court of Macon, a part thereof. The act of 1885 provides that the salary of the judge of the city court of Macon "shall be paid monthly out of the treasury of the county, . . by the person or persons charged by law with paying out of the moneys of Bibb county." Acts 1884-5, p. 471. The salary of the judge of the city court of Coffee county is a fixed charge, payable monthly out of the treasury of the county by the person charged by law with paying out the moneys of the county.

The question is in principle controlled by the decision in *Clark* v. *Eve,* 134 *Ga.* 788 (68 S. E. 598). It was made the duty of the commissioners of Richmond county to examine, settle, and allow all claims against the county. Acts 1882-3, p. 528; Acts 1907, p. 324. In the case referred to this court held: "Under the provisions of the act approved August 15, 1905, . . the salary of the judge of the city court of Richmond county became fixed by law, payable out of the county treasury in monthly installments; and it was unnecessary for the judge of the city court to have his claim

for salary audited and a warrant on the county treasurer issued therefor. . . Upon the refusal to pay, mandamus will lie against the treasurer of the county, to compel payment of any part of the salary when by law it is payable and after it has been demanded, although at the time of making demand no formal warrant has issued therefor." With respect to the receiving and paying out of the moneys of Coffee county, the depository occupies precisely the same position as the county treasurer.

6. For the reasons above stated, the court erred in sustaining the demurrer and dismissing the petition.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*