## CULBERSON, treasurer, *v.* WATKINS.

1. It is unnecessary for a judge of the juvenile court of Fulton county to have his claim for salary audited or approved by the board of county commissioners. This court having been created by law, and the method of compensation having been provided by law, and the amount of his salary having been fixed for a designated term, and it being further provided by law that all of the expenses of the court should be paid out of county funds, it is the duty of the county treasurer to pay the salary fixed in accordance with law when earned as demanded. Upon the refusal to pay, mandamus will lie against the treasurer of the county to compel payment of any part of the salary when by law it is payable and after it has been demanded, although at the time of making demand no formal warrant had issued therefor.

2. The word "fix," as ordinarily used, means to place securely, settle, determine, immovable, unalterable. The term imports finality and stability.

3. The judges of the superior court of Fulton county, who are authorized by the act of 1915 (Acts 1915, p. 35) to appoint for a term of six years and fix the salary of a judge of the juvenile court, have no power during the term to alter the salary of such judge. "It is a well-settled rule that a person accepting a public office, with a fixed salary, is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services." 1 Dill. Mun. Cor. (5th ed.) § 426. Consequently the reason stated in the order of the judges, "that the present salary received by the judge of said court is not commensurate with the amount of work he is required to perform," affords no legal ground for an increase of the salary of the judge of the juvenile court; and it was error to require the county treasurer of Fulton county, by mandamus absolute, to pay the judge of the juvenile court a salary of $450 per month instead of $350, which was the compensation fixed by the original order of his appointment.

No. 3506. SEPTEMBER 5, 1923.

Mandamus. Before Judge Humphries. Fulton superior court. November 3, 1922.

Garland M. Watkins, who is judge of the juvenile court of Fulton county, filed a petition for mandamus, in which he alleged that on September 27, 1922, the judges of the superior court of Fulton county, Georgia, passed and signed an order fixing the compensation of petitioner as judge of said court at $450 per month, effective September 1, 1922; and that petitioner had made demand on H. L. Culberson, as treasurer of Fulton county, for payment thereof, but he had failed and refused to pay petitioner his salary for the month of September, 1922. He prayed that the treasurer be required to show cause why he should not pay the salary or compensation as fixed by the judges. The defendant in his answer admits that he has failed to pay the compensation or salary to petitioner, without any intention or desire on his part to disregard any lawful order of the court, but with a full and firm resolve to comply with all the laws with reference to the duties imposed upon him as the custodian of the public funds. He further sets up, that the payment of all funds from the treasury of Fulton county is audited by authority of the board of commissioners of roads and revenues, and a universal custom has grown up that only such funds as are audited by authority of said board are then approved by it, and after the same has been done warrants are drawn by said board upon the county treasurer, which are then paid; that this custom has been followed in said county for a great many years; that respondent is informed and believes that the matter of the increase in the salary of Judge Watkins has been presented to said board, and the same has not been approved, but the approval of the board has been denied; that the judge was appointed for a term of six years at a salary of $350 per month; and that his compensation cannot be increased during the term. For these reasons respondent says that he should not be required to make payment from the funds of said county, but that he is willing to do so in the event it shall be determined by the court that such charge is a lawful one to be paid from the treasury.

Upon the hearing the movant proved the allegations of his petition, and the respondent established the facts that he had set up in his answer. The trial judge granted a mandamus absolute as prayed, and the respondent excepted.

*E. E. Pomeroy,* for plaintiff in error.　*G. M. Watkins,* contra.

RUSSELL, C. J.　(After stating the foregoing facts.)　There are two questions presented by the record.　The first is whether the judges of the superior court of Fulton county have the power to change the amount of the salary of the judge of the juvenile court of Fulton county during the term of his appointment and after it has been once fixed; and the second is whether it is necessary that the salary of the judge of the juvenile court of Fulton county be audited and approved by the county commissioners of Fulton county.　We shall consider these questions in reverse order.

1.　Under the previous decisions of this court it seems plain that the approval of the county commissioners is not necessary to enable the judge of the juvenile court of Fulton county to collect any compensation that may be provided for him by law.　Under the provisions of § 39 of the act of 1915 (Acts 1915, p. 49) the salary of the defendant in error as judge of the juvenile court of Fulton county is payable out of county funds in the hands of the treasurer of that county.　There is no other way in which the salary or compensation can be paid.　The court having been created by law, the judge being appointed by law, and the method of paying the salary of the judge being provided by law, there is no necessity for an audit of the claim nor that a formal warrant therefor be issued.　The case as to this stands upon the same basis as the extra compensation which, by an amendment to the constitution, certain counties are permitted to pay to the judge of the superior court in addition to the compensation derived from State funds as provided by the constitution.　In *Clark* v. *Eve,* 134 *Ga.* 788 (6 *a*) (68 S. E. 598), this court laid down the rule as follows: "Under the provisions of the act approved August 15, 1905 (Acts 1905, p. 101), as applicable to the County of Richmond, the salary of the judge of the city court of Richmond county became fixed by law, payable out of the county treasury in monthly installments; and it was unnecessary for the judge of the city court to have his claim for salary audited and a warrant on the county treasurer issued therefor.　See *Gamble* v. *Clark,* 92 *Ga.* 696 (19 S. E. 54); *Lamb* v. *Toomer,* 91 *Ga.* 621 (17 S. E. 966); *Chatham County* v. *Gaudry,* 120 *Ga.* 121 (47 S. E. 634), and cit.　Upon the refusal to pay, mandamus will lie against the treasurer of the county, to com-

pel payment of any part of the salary when by law it is payable and after it has been demanded, although at the time of making demand no formal warrant had issued therefor." See *Rogers* v. *Citizens Bank,* 149 *Ga.* 568 (101 S. E. 674).

Section 39 of the act of 1915 (Acts 1915, p. 49) provides that " All expenses incurred by the court in complying with the provisions of this act shall be paid out of county funds." The salary of the judge is necessarily one of the items of expense in operating the court. There is only one way in which the salary of the judge can be paid, and this is from the funds of the county. To hold that the county commissioners, by withholding their approval of the payment of such sums that might be fixed by the judges of the superior court, could defeat the provision for the payment of the judge of the juvenile court, would be, to leave to the discretion of the county commissioners the question whether a juvenile court could exist; and evidently this view of the case was not in the minds of the General Assembly at the time of the passage of the act. From a reading of the act of 1915 (Acts 1915, p. 35) it seems clear that the juvenile court was created by law, and the judge appointed by law, and his compensation was fixed by law, and the method of payment was provided by law, to wit, from the " county funds " of Fulton County.

For the reasons above stated, we hold that there is no necessity for any audit or approval of the salary by the county commissioners nor any requirement that a formal warrant be issued. *Clark* v. *Eve,* supra. The salary of the judge of the juvenile court of Fulton county is a fixed charge to which the funds of the county are subject, and proof of payment suffices to enable the county commissioners to legally account for such portion of the public funds as is disbursed in extinguishment of this charge.

2. However we do not think that it is in the power of the judges of the superior court to increase or diminish, during the term for which he is appointed, the salary once " fixed " as compensation of the judge of the juvenile court of Fulton county; and for that reason the order requiring the payment to the judge of that court of the sum of $450 per month is erroneous. It is plain that the order of the judge requiring the payment of $450 in payment of the salary for the month of September, 1922, is erroneous; for that order concerned payment for past services already fixed

at $350 per month; and nothing is better settled than that compensation for services in the past can not be altered, either increased or diminished, whatever may be the rule as to the power to increase or diminish compensation for services to be rendered in the future. The order of the judge changing the salary was entered on September 27, 1922. The month of September, or at least all of it but three days, had already passed before this order was entered, and it was therefore clearly a payment for services rendered before the order except for three days, September 28, 29, and 30. We might rule upon this point only, and a ruling only as to this would suffice to dispose of the present writ of error. But inasmuch as it appears, from a note of the presiding judge correcting the bill of exceptions, that demand was made by movant on respondent since October 1 for the salary due under said order, and that the plaintiff in error fails and refuses to pay the same, we shall dispose of the questions presented by the bill of exceptions at this time and thus obviate a reappearance of this case at a later date.

For the purpose of this case it may be conceded that the law attaches a salary to an office as an incident thereof, and not by force of contract. 29 Cyc. 1427, par. 3; 22 R. C. L. 532-533, § 227; *Collins* v. *Russell,* 107 *Ga.* 423 (33 S. E. 444); *Tucker* v. *Shoe-maker,* 149 *Ga.* 250-252 (99 S. E. 865). And in 22 R. C. L. 524-525, § 216, it is said that " Such salary as may be attached to any office is not given to the incumbent because of any duty on the part of the public to confer emoluments on him, but to enable him the better to perform the duties of the office; for without adequate compensation it cannot be expected that he will be able to give due attention to his official duties. In all cases the right to such compensation is such only as may be given by law; and whether it is an annual salary or a per diem allowance, or consists of particular fees for particular services, depends on the will of the lawmakers. Hence it is that the courts are uniform in asserting that the right of a public officer for compensation for the performance of duties imposed on him by law does not rest on contract, either express or implied. Even the measure of compensation is arbitrary with the legislature, and it is not necessarily determined by the value of the officer's services. A distinction should be drawn between compensation for past services rendered and services to

be rendered in the future. The latter are clearly under the control of the legislative power." Many cases are cited in support of this legal principle. It is argued for the defendant in error that there is no express inhibition in the constitution of this State which prevents the judges of the superior court of Fulton county from making an increase in the salary in question. Section 21 of the act of 1915, creating juvenile courts in counties in this State having a population greater than 60,000 (Acts 1915, p. 43), provides that "The judge of the superior court of the county shall appoint the judge of said juvenile court for a term of six (6) years, and shall fix the compensation." This is a single official act in which all of the constituent elements are to be completed at one and the same time, — at the time of the appointment. The term is for six years and the compensation is to be fixed for the term at the time of the appointment. When the judge of the superior court "fixes" the salary for the term, his power of "fixing" is exhausted for that term of six years.

Plainly it could not have been intended by the legislature that the judge of the superior court could, as a mere matter of his volition and for any reason which might appeal to him, diminish the salary fixed at the time of the appointment as a means perhaps of relieving himself and the county of the services of a judge of the juvenile court whose services might be unsatisfactory; and if there is any power to alter the salary, the judge of the superior court would have as much right to cut the salary down to a mere nominal sum as to increase it. For the very reasons stated in *Clark* v. *Eve,* supra, and upon the principle that the salary is a fixed charge which the county authorities are obliged to pay, it would never do to hold that the judge of the superior court was authorized to use a sliding scale, operating only at his volition, and by the application of which the salary of the judge of the juvenile court could be $300 one month and $600 another, according to ephemeral exigencies due to variable circumstances affecting the amount of business transacted in the juvenile court, etc.

While the county commissioners must pay the sum fixed by the judges of the superior court, these officials must have a "fixed" sum to use as a guide in levying the taxes necessary to provide that sum. Any other rule would lead to probable deficiencies in the county revenue which might be necessary to supply the salary

fixed. The right given the judge of the superior court under this act is confined to fixing the compensation for a six-year term; and no right is given him in the act to change the compensation after the appointment has been made, unless the meaning of the word "fix" can be so extended as to interline into the act the words "and alter," so as to give the word "fix" an *unstable* instead of a *stable* significance. If the legislature had intended the word "fix" to include the power to alter, necessarily it would have been the purpose of the General Assembly to fix a variable salary of an entirely indeterminate scope, depending altogether upon the wish or wishes of successive judges of the superior court, who in turn would have this power of changing the salary of the judge of the juvenile court, each according to his own discretion. Public moneys can only be withdrawn from public treasuries under express enactments, and the burden is in all instances upon the official seeking the money to show an *express* authority of law for the payment thereof to him. One who seeks sums raised by taxation as compensation for services to the public cannot safely rest his case upon implication unless the doctrine of quantum meruit were applicable, and the latter doctrine is never applicable where there has been a pre-existing contract. Furthermore the use of the word "fix," in the statutes creating the juvenile court, precludes the idea of variableness or alteration unless additional qualifying terms had been used.

We have been unable to find a Georgia case in which the word "fix" has been judicially defined, but in other jurisdictions the use of the word "fix" implies finality. "Fix" is defined by the Standard Dictionary as "to decide definitely, make sure, settle, determine; as, ' His fate will be fixed to-night.'" Ft. Miller Pulp &c. Co. *v.* Bratt, 119 App. Div. 685 (104 N. Y. Supp. 350, 356). "Under Laws 1903, p. 64, § 9, requiring a public improvement ordinance to fix the time the work shall be completed, . . . an ordinance, requiring the work to be completed within a specified time provided the days' work lost because of injunction, court proceedings, bad weather, strikes, etc., shall be added to the days specified, is invalid, because it fails to fix a time for the completion of the work, the word "fix" meaning immovable or definite; to determine or settle definitely." Rackliff *v.* Peters, 136 Mo. App. 168 (115 S. W. 503, 504). The word "fix" is defined in Bouvier's

Law Dictionary as "to determine, to settle." Bunn *v.* Kingsbury County, 3 S. D. 87 (52 N. W. 673). "To 'fix a compensation,' within B. & C. Comp. §§ 2636, 2638, requiring the county court to 'fix a compensation' for publishing its proceedings, is to prescribe a rule or rate by which it is to be determined (citing And. Law Dict.). It is something more than a mere examination and allowance of a claim against the county; it not only involves the determination of the amount to be allowed, but makes the result final and conclusive upon the parties by a decision or order." Flagg *v.* Columbia County, 51 Or. 172 (94 Pac. 184, 186). See also National Candy Co. *v.* Miller, 160 Fed. 51, 56 (87 C. C. A. 207).          *Judgment reversed. All the Justices concur.*