## KIRKLAND v. DOWNING.

Specific performance not being a remedy which either party to a contract can demand as a matter of absolute right, it will not in any given case be granted unless strictly equitable and just. Accordingly, specific performance of a contract to convey land upon payment of the purchase-price will not be decreed where it appears that the party seeking the aid of the court entered into a parol agreement with the defendant to the action to become answerable for the debt of another, and to pledge the land as security for the fulfillment of this further obligation, notwithstanding such agreement be not legally binding or enforceable because coming within the operation of the statute of frauds. On the contrary, the plaintiff will be left to pursue his legal remedies, unless he elects to submit to such terms as the court may properly impose upon him as a condition precedent to the granting of the relief sought.

Argued November 23, 1898. — Decided March 4, 1899.

Equitable petition. Before Judge Sweat. Glynn superior court. May term, 1898.

M. Kirkland sued Downing, alleging, in brief, that in July, 1890, plaintiff bought certain land from one Sibley and one Weston, and entered into a contract with the defendant whereby defendant advanced the purchase-money of the land and charged the same to plaintiff upon an account then due him by the plaintiff, and plaintiff, as security for the payment of the money so advanced, caused the deeds from Sibley and Weston to be made to defendant, with the distinct understanding between plaintiff and defendant that, upon the payment by the plaintiff of the money advanced for the purchase, the title to the land should be transferred to him by defendant; that on or about July 1, 1895, he fully paid the money so advanced, and all his other indebtedness to defendant, and in law and good conscience the title to the land was in him, but defendant refused to transfer the title as agreed. He prayed that defendant be required to specifically perform the contract. The defendant denied the substantial allegations of the petition, and averred, that at the time of the purchase of the land, a firm of which the plaintiff was a member, consisting of himself and his son T. S. Kirkland, engaged in the manufacture of naval stores, were shipping products of their manufacture to the firm of C. Downing Jr. & Co., of which the defendant was a member, and receiving from that firm advances in money

and supplies for the purpose of carrying on said business; and plaintiff applied to the defendant to provide, through C. Downing Jr. & Co., the money for the purchase of the land; and to that end C. Downing Jr. & Co. agreed with plaintiff that they would purchase the property in the name of defendant, and that title thereto should be made in defendant's name in trust for his firm, and that he should hold the same, not only as security for the purchase-price so agreed to be paid, but also as security for any and all liability and indebtedness of any character due or to become due by plaintiff, or any firm of which he might be a member, to C. Downing Jr. & Co., their successors and assigns, in carrying on the business of manufacturing naval stores, in which plaintiff and his associates were engaged; and that whenever the entire business relations between plaintiff and defendant were completely wound up and ended, and no balance of any character was due the firm, the land would be quitclaimed to plaintiff by defendant. In accordance with this agreement, C. Downing Jr. & Co. bought and paid for the land, and deeds were accordingly made and delivered to the defendant for the purpose above set forth, and they have been since and are now so held. C. Downing Jr. & Co. have since been succeeded in business by the Downing Company, a corporation, which purchased all the assets of the firm, and thereby defendant became seized of the land in question, under the uses and trusts for which he held title for C. Downing Jr. & Co. It is untrue that plaintiff has fully discharged the indebtedness for which he and the premises sued for are liable in the hands of defendant. A balance of $4,-219.82, besides interest from February 1, 1897, is still due by plaintiff to the Downing Company, for which the premises are liable; and until the payment of the same, plaintiff has no right to a reconveyance. Upon the payment of the same by the plaintiff, defendant will execute a good and sufficient quitclaim deed of conveyance to plaintiff, or whomsoever he may designate to receive title.

On the trial an amendment was offered by defendant, and was allowed by the court, over objection that it set forth no legal defense. To the allowance of the amendment the plain-

tiff excepted.   The amendment was, in substance, as follows:
The title to the land was vested in defendant by the parties,
from whom plaintiff purchased it, at plaintiff's instance and
request, not only to secure C. Downing Jr. & Co. for the money
advanced by them to pay for the land, but also for the purpose
of securing C. Downing Jr. & Co., or any successors or assigns
of said firm, for any and all indebtedness that plaintiff might,
in the future become due to them.   When the plaintiff, in
June, 1895, sold his turpentine plant and business, defendant
as manager and president of the Downing Company, the suc-
cessor of C. Downing Jr. & Co., refused to consent to such sale
and to transfer the indebtedness then standing upon said com-
pany's books against the plaintiff to T. S. Kirkland, to whom
the business was sold, except upon the specific agreement that
defendant should hold title to said land for the purpose of se-
curing, not only said transferred account of about $5,000, but
also all other advances that should be made by said company
to T. S. Kirkland.   The plaintiff agreed to this, and therefore
the Downing Company transferred said account and made ad-
ditional advances, amounting to about $5,000, to T. S. Kirk-
land, solely upon the faith and credit of the land, the title to
which was in the defendant.

    The trial resulted in a verdict for the defendant.   The plain-
tiff's motion for a new trial was overruled, and he excepted.
The motion alleged, besides the general grounds, that the court
erred in charging the jury as follows:   "If you shall find all
the contentions as made upon the part of the defendant in this
case to be true; if you shall find   .   .   that the title to the
land was not only to be held by C. Downing Jr. in his own
name until the individual indebtedness of M. Kirkland and of
the firm in which M. Kirkland was interested as a partner was
paid off and discharged, but that, in addition thereto, at the
time of the transfer of the turpentine business from M. Kirk-
land to T. S. Kirkland, it was then understood between the
parties that C. Downing Jr. was to continue to hold the lands
in question until the indebtedness then assumed by and charged
to T. S. Kirkland, and all future indebtedness of T. S. Kirk-
land, was paid off and discharged; if it shall be your finding:

that that is the truth of this matter, from all the evidence which has been submitted to you, then the defendant, C. Downing Jr., would have the right to continue to hold the title to the land in question until all such indebtedness was paid off and discharged, he not being required or compelled to convey the title from himself unto M. Kirkland; and if there is a balance of any amount, four thousand dollars or any other sum, remaining unpaid, until that is paid off and discharged, the defendant, C. Downing Jr., could not be required or compelled, properly, to convey the title from himself unto the plaintiff, ·M. Kirkland." It is contended that this charge permitted the defendant to take advantage of a defense in contravention of the statute of frauds, holding M. Kirkland responsible for the present and future indebtedness of T. S. Kirkland.

The plaintiff excepted also to the decree entered, upon the ground that it was not warranted by the pleadings, nor in harmony with the verdict. The decree was, "That the prayers of the petitioner, M. Kirkland, be and the same are hereby refused and disallowed, and, on the contrary, that the position as taken by the defendant, C. Downing Jr., in his original and amended answers, be and the same [is] hereby sustained"; and "that the title to the premises named in the petition . . be and the same [is] hereby vested in the defendant, C. Downing Jr., for the use, however, of the Downing Company, a corporation, as security for the payment of the sum of $4,219.82, besides interest at the rate of seven per cent. per year from the first day of February, 1897, as set up in the answers of the defendant, C. Downing Jr.," and that the costs be taxed against the plaintiff.

*Hitch & Myers, Atkinson & Dunwody* and *Spencer R. Atkinson,* for plaintiff.

*Goodyear & Kay* and *Brantley & Bennet,* for defendant.

FISH, J. The forum in which the plaintiff elected to test the righteousness of his complaint was one exercising equitable jurisdiction. His prayer was for specific performance of a contract—a purely equitable remedy. He chose to invite the court to pass upon his equitable, rather than upon his strictly

legal rights in the premises. In defense to the action, the defend-
ant was permitted to allege, and to submit evidence to sustain
his contention, that the time for such performance had not as yet
arrived, for the reason that the plaintiff had expressly agreed to
become answerable for certain obligations on the part of his son,
which had not been met, and that the title to the land in con-
troversy should be held by the defendant as security until his
claims against the son had been fully satisfied. This agreement
was not in writing, and the plaintiff therefore sought, but without
success, to induce the trial court to ignore it, his position being
that such an agreement comes within the operation of the stat-
ute of frauds, and is, in consequence, of no binding legal effect.
That is to say, the plaintiff apparently recognized that unless
he could avail himself of his purely technical, legal right to
repudiate this alleged agreement, his prayer for the equitable
relief sought would be painfully lacking in moral support.
The question is therefore squarely presented, whether or not he
is at liberty to insist that the court close its eyes to the uncon-
scionable advantage it is alleged he thus seeks to gain over his
adversary, to the end that he may procure its aid, regardless
of the hardship which will be entailed upon the defendant.

In the first place, it may be remarked that specific perform-
ance is a remedy which "is never to be demanded as a matter
of absolute right in either party" to a contract, "and a much
stronger case is required to maintain the suit than to defeat it."
22 Am. & Eng. Enc. L. 911, 912. "Equity will not decree
specific performance unless strictly equitable." Ibid. 931.
On the contrary, "In all cases where it is clearly inequitable
to grant it, the court will refuse to do so. In exercising its
discretionary powers, it will act with more freedom than when
exercising its ordinary powers." Fry, Spec. Perf. (3d ed.) 23,
n., citing numerous cases. As has often been said, the grant-
ing or withholding of this peculiar relief is "in the discretion
of the court. The meaning of this proposition is, not that the
court may arbitrarily or capriciously perform one contract and
refuse to perform another, but that the court has regard to the
conduct of the plaintiff and to circumstances outside the contract
itself, and that the mere fact of the existence of a valid con-

tract is not conclusive in the plaintiff's favor." Accordingly, if the defendant "can show any circumstances dehors, independent of the writing, making it inequitable to interpose for the purpose of a specific performance, a court of equity, having satisfactory information upon that subject, will not interpose." Ibid. § 25. And to the same effect, see Pomeroy on Contracts, § 36 et seq.; Civil Code, § 4040.

It follows that, looking in each instance to the peculiar circumstances surrounding the parties, a court of equity may often impose terms upon the plaintiff as a condition precedent to the granting of the relief sought. Thus, "where a trustee had purchased land in his own name but really for the cestui que trust, and had paid the purchase-money with his own funds and was a creditor of the cestui que trust for other advances made to or for him, it has been held that such beneficiary could not compel a conveyance from the trustee to himself, except upon payment of his entire indebtedness, as well that growing out of this purchase as that arising from the other advances." 1 Pom. Eq. Jur. § 392. "The principle that he who comes into the court seeking equity — that is, seeking to obtain an equitable remedy — must himself do equity, means not only that the complainant must stand in conscientious relations towards his adversary, and that the transaction from which his claim arises must be fair and just in its terms, but, also, that the relief obtained must not be oppressive nor hard upon the defendant, and must be so shaped and modified as to recognize, protect, and enforce all *his* rights arising from the same subject-matter, as well as those belonging to the plaintiff." Pomeroy on Contracts, § 175. This being true, specific performance will be denied, not only where "the plaintiff has obtained the agreement by sharp and unscrupulous practices," or where the "contract itself is unfair, one-sided, unjust, unconscionable, or affected by any other such inequitable feature," but also where it appears "the enforcement itself would be oppressive or hard upon the defendant, or would prevent the enjoyment by him of his own rights, or would in any other manner work injustice." Ibid.

Unquestionably, as is urged by the plaintiff in the present

case, the statute of frauds proclaims a definite public policy as regards the enforcement of a promise not in writing and signed by the party to be charged therewith, "to answer for the debt, default, or miscarriage of another." See Civil Code, § 2693. But it does not follow that a court of equity, in reaching its determination whether or not a party is entitled to extraordinary relief which he can not demand as matter of right, is not at liberty to weigh the equitable, as well as the strictly legal rights of himself and his adversary. The real purpose of the statute is always to be kept consistently in view. "As its primary object is to prevent mistakes, frauds and perjuries, by substituting written for oral evidence in the most important classes of contracts, the courts of equity have established the principle, which they apply under various circumstances, that it shall not be used as an instrument for the accomplishment of fraudulent purposes; designed to prevent fraud, it shall not be permitted to work fraud. This principle lies at the basis of the doctrine concerning part performance, but is also enforced whenever it is necessary to secure equitable results." Pomeroy on Contracts, §71. Indeed, it is an established rule in equity "that a man shall not be permitted to use a statute, more than any other assistant, for the purpose of promoting his own fraudulent intents or defending his own fraudulent conduct." Ibid. §103. Certainly, in the case now before us, it was eminently proper for the court to hear evidence concerning the agreement on the part of the plaintiff which was set up as matter of defense. Conceding that this evidence established no right, legal or equitable, which could be enforced in behalf of the defendant, it nevertheless was competent as going to show that the plaintiff was not entitled to the remedy he attempted to invoke. "Even the statute of frauds can not, by shutting out parol evidence, be converted into an instrument of fraud or wrong." 2 Pom. Eq. Jur. § 858. In all proceedings where extraordinary equitable relief is sought, the court should open wide the door to pertinent evidence, to the end that the truth concerning the transaction under investigation may fully appear, and that the court may act advisedly and wisely in the premises. "Parol evidence must be admitted in these classes of cases, in order to a

due administration of justice. If the general doctrine of the law or the statute of frauds was regarded as closing the door against such evidence, the injured party would be without any certain remedy and fraud and injustice would be successful." Ibid. § 859. To extrinsic circumstances must the court necessarily often look in determining whether or not a specific performance of a contract may equitably be decreed. Pomeroy on Contracts, § 183. The very fact that a plaintiff manifests a disposition to inequitably repudiate an agreement by which he is not in strict law bound may often furnish an all-sufficient reason why he should be remitted to his legal remedies rather than be afforded fuller aid and protection by a court of equity.

The conclusion inevitably to be reached in the present case is, we think, that the court properly allowed the defendant to interpose and to submit evidence to establish the defense above indicated. It follows, of course, that the charge complained of, in which the trial judge instructed the jury as to their finding in the event they should believe the testimony introduced in support of this defense, was pertinent and correctly presented the issue upon which they were to pass. So far, therefore, as the verdict is concerned, it should stand, as there was ample evidence to warrant the jury in their finding.

The decree entered up by the court is, however, in one respect unauthorized; and as exception is made thereto, it should in this particular be corrected. We refer to that portion which adjudges that the land in controversy shall be held by the defendant as security for the payment of the debt of the plaintiff's son, for which, defendant alleged, the plaintiff had by a parol agreement undertaken to become answerable and to pledge the land as security. Doubtless it was within the power of the court to impose terms upon the plaintiff, and to decree that this debt should be discharged by him as a condition precedent to the granting of the relief sought; but it was not likewise within the power of the court to adjudge that this debt should constitute a special lien on the land, irrespective of the plaintiff's election to accept the terms upon which the court was willing to grant relief. In other words, we wish to be understood as holding that while the parol contract set up by the

defendant afforded a sufficient reason for denying the remedy of specific performance, it could not itself be enforced in disregard of the statute of frauds, so as to bring about the result reached by the trial judge in framing this portion of the decree. Appropriate direction, which we have given, will, however, cure this infirmity.

*Judgment affirmed, with direction. All the Justices concurring.*