## TUCKER, ordinary, *v.* SHOEMAKER, sheriff.

The yearly compensation provided by the act of the General Assembly (Ga. L. Ex. Sess. 1915, p. 85), for the performance of the duties imposed on sheriffs of the several counties of this State, is in the nature of salary,

and its payment is therefore not dependent upon the performance by the officers of such duties.

No. 1147. JULY 17, 1919.

Mandamus. Before Judge Jones. Dawson superior court. August 5, 1918.

The writ of error is to a judgment absolute rendered by the judge, to whom the case was submitted without the intervention of a jury. The suit was instituted by the sheriff of Dawson county against the ordinary of the county, for the writ of mandamus to compel the ordinary to approve a claim filed by the sheriff for payment of $25 from the general funds of the county, alleged to be due the sheriff under the provisions of section 16 of the act of 1915 (Ga. L. Ex. Sess. 1915, p. 77) as compensation for service as prescribed in that act for the year 1917. The ordinary defended the suit, on the ground that the sheriff had not rendered any service for which the county was liable. The act in question imposed upon the sheriff of each county in the State the duty of procuring from the internal revenue collector's office the names of all persons resident within the jurisdiction of such sheriff, who had obtained licenses to sell intoxicating liquors, etc., and to cause such names to be published in the local paper in a specified manner, and that for such services the sheriff should be paid annually $25 and the cost of advertisement, etc. The sheriff submitted evidence that he had employed an attorney, resident in Atlanta, to examine the records of the collector of internal revenue, who each month furnished written reports to the effect that there were no names of persons registered from the county of Dawson. The only proof relied on to show examination by the attorney consisted of letters and an ex parte affidavit. A motion was made to exclude such letters and affidavit from evidence, on the ground that they were irrelevant and hearsay. No ruling was made upon the admissibility of the evidence, and the judgment absolute was rendered without making any reference to such motion. The only assignment of error was that the judgment was contrary to law, and was without evidence to support it.

*O. J. Lilly*, for plaintiff in error. *McMillan & Erwin*, contra.

ATKINSON, J. 1. It was contended that the compensation provided in the act of 1915 was for a particular service to be rendered by the sheriff; and that mandamus absolute should not be granted, because it appeared that the sheriff did not personally render the

service contemplated by the statute, and could not do so by an agent or any one else, except a lawfully constituted deputy, and as a matter of fact no names were procured from the records of the collector of internal revenue and published in the county as provided in the act, and under such conditions no service had been rendered which would authorize the ordinary to approve the claim submitted by the sheriff. The whole case depends upon the effect of section 16 of the act of 1915. If the compensation therein provided for the sheriffs was in the nature of a salary and payable at all events, it would be immaterial whether the sheriff had rendered any service at all, or whether or not it was appropriate for him to act by an employed agent rather than personally or by a lawfully sworn deputy. In *Collins* v. *Russell*, 107 *Ga.* 423 (33 S. E. 444), it was said: "There can be no question about the proposition that the legislative power of the State is absolute with respect to all offices that it creates, where no constitutional restriction is placed upon its power with reference to such offices. The incumbent of such an office does not hold the same by virtue of any sort of contract, express or implied, with the State or its lawmaking power, which gives him a vested right in the office. He accepts the office subject to the control of it by any legislative action in reference thereto which might thereafter be taken. The legislature may abolish the office before his term expires, may modify its duties, may shorten or lengthen the term, and increase or diminish the salary or change the mode of compensation. See Butler *v.* Pennsylvania, 10 How. 402 [13 L. ed. 472], affirmed in Newton *v.* Commissioners, 100 U. S. 559 [25 L. ed. 710]; *City Council of Augusta* v. *Sweeney,* 44 *Ga.* 463 [9 Am. R. 172]. So well settled is this principle that further discussion or citation of authority on the subject is unnecessary." In 22 R. C. L. § 216, p. 524, it is said: "As stated elsewhere the incumbent of an office has no property in it, for his right to exercise it is not based on any contract or grant, but is conferred on him as a public trust, to be exercised for the benefit of the public. Such salary as may be attached to any office is not given to the incumbent because of any duty on the part of the public to confer emoluments on him, but to enable him the better to perform the duties of the office, for without adequate compensation it cannot be expected that he will be able to give due attention to his official duties. In all cases the right to compensation is such only as may

be given by law, and whether it is an annual salary or a per diem allowance, or consists of particular fees for particular services, depends on the will of the lawmakers. Hence it is that the courts are uniform in asserting that the right of a public officer to compensation for the performance of duties imposed on him by law does not rest on contract either express or implied. Even the measure of compensation is arbitrary with the legislature, and is not necessarily determined by the value of the officer's services." In State v. Barnes, 24 Fla. 29 (3 So. 433), it was held that a statute which provided that the county attorney should receive "$3.00 per diem, Sundays excepted, per annum," fixed a salary as distinguished from a fee for a particular service. In the course of the opinion it was said: "Compensation of officers given in this way is distinguishable from fees dependent upon services performed, and comes within the rule of fixed compensation by time, that constitutes the earmark of salary." See also cases cited under the definition of salary. 7 Words & Phrases, 6287.

Section 16 of the act of 1915, supra, is as follows: "Be it further enacted by the authority aforesaid, That the sheriffs of the various counties shall at least once every month, between the first and tenth days of the month, procure from the office of the United States internal revenue collector the name of each person, firm, or corporation to whom a United States internal revenue license, or tax stamp, has been issued, as a wholesale or retail liquor dealer, or a wholesale or retail dealer in malt liquors, or a brewer or rectifier of spirits, and the name of each person, firm, or corporation that has complied with the laws of the United States to become or carry on the business of a distiller in his county; and such sheriff shall immediately thereafter cause to be published for two successive weeks in some newspaper in his county, in such black type as will call special attention thereto, the names of said parties, together with the location of their places of business, giving street numbers when obtainable; for such services the sheriffs shall each receive the sum of $25.00 per annum, and the expense and cost of publishing the same, to be paid out of the general funds of his county. Any sheriff who shall fail, neglect, or refuse to comply with the provisions of this section shall be guilty of a misdemeanor." This law imposed a statutory duty upon sheriffs that had not previously devolved upon such officers. The duty did not arise out of con-

tract, or depend upon the volition of the officer. It could have been imposed by statute without any compensation, and compensation was provided only as a matter of policy. The fees provided by law for sheriffs do not apply to such services. Civil Code, § 5997. Owing to the nature and amount of services that the sheriffs in the various counties of the State might be required to perform, what would be reasonable compensation for each separate service allowable upon recommendation of the grand jury, under the Civil Code, §§ 4919, 6001, would be uncertain and might lead to extravagance. Therefore, in imposing the duty, a lump sum for a definite period was provided, viz., "$25.00 per annum" for all the services to be rendered during any year. Such provision for compensation denotes that the basis of compensation was for the time in which the officers were required to render the services, rather than the mere amount or character of services which should be actually performed. When this law was enacted the legislature well knew the provision of the Civil Code, § 5997, supra, prescribing fees to which sheriffs should be entitled for particular services. They well knew the provisions of the Civil Code, §§ 4919, 6001, which authorize payment to sheriffs for particular services upon recommendation of the grand jury in instances for which there was no law providing compensation for such services. If it had been contemplated by the act of 1915 to compensate the sheriffs upon the basis of particular services rendered, it was entirely unnecessary, in view of the existing laws, to have made any reference to compensation in that statute. According to the terms of the statute, the duties therein specified were imposed by law, and in no sense depended upon the emolument incidentally provided as pertaining to the office of sheriff. If the officers refused to comply with their duties, they could be compelled to do so by writ of mandamus, and would be answerable to their constituents at the polls, and moreover, by the terms of the act, would be guilty of misdemeanor and subject to prosecution and punishment under the penal laws of the State. Under the circumstances, the act of 1915 should be construed as providing for compensation of the sheriffs in the nature of salary, which will not be dependent upon the performance by the officers of the duties so imposed. Under this view the judge properly granted the mandamus absolute.

*Judgment affirmed. All the Justices concur. Beck, P. J., Hill, J., and George, J., concur in the result.*