INTERSTATE BOND COMPANY *v.* CULLARS; *et vice versa.*

284

Nos. 13007, 13008.   October 19, 1939.   Rehearing denied
November 17, 1939.

*B. W. Fortson,* for plaintiff.  *Earle Norman,* for defendant.

GRICE, Justice.  ■  When Interstate Bond Company, the purchaser at the tax sale, applied to the judge of the superior court, under the Code, § 39-1313, for an order directing the sheriff to put it in possession, the judge issued a nisi directed to the sheriff and to Cullars, the tenant in possession, to show cause why the order prayed for should not be granted.  At the hearing, after the application had been amended, Cullars demurred thereto; and his demurrer being overruled, he excepted.  One ground of demurrer was that the applicant failed to allege that the respondent was the defendant in execution, his heir or tenant, or one of his assignees since the judgment.  It was stated in the application that applicant was the purchaser under certain tax executions against J. T. Loflin, and that the property so purchased was in the possession of T. W. Cullars, who had said possession by, through, or under the defendant against whom said fi. fas. were issued.  That ground of the demurrer was without merit.  The position of counsel is that under the Code, § 39-1309, and other applicable provisions of the law, no person other than the defendant, his heirs, or their tenants or assigns since the judgment can be summarily evicted from land by virtue of a sale under execution.  The Code, § 92-8102, declares that sales under tax executions shall be made under the rules governing judicial sales; and § 92-8108 provides that, as to such sales, the officer selling has the authority to put purchasers in possession of land sold under tax fi. fas. as in other cases.  Another ground of demurrer was that the value of the property was not alleged, nor was there an allegation that the levy was not excessive.  This ground is without merit.  The only reason suggested why, in an application of this kind, the value of the property should be set forth is that it would tend to show whether or not the levy was excessive; but this contention, if sustained, would be to eliminate the principle that there is a presumption that the sheriff did his duty, and therefore did not make an excessive levy.  The only other ground of demurrer argued is that Loflin, the defendant in execution, was a necessary party.  The application under the Code, § 39-1312, or § 39-1313, is not a suit.  Strictly speaking, there are no parties to it.  The provision for summary process contains

no requirement for notifying the defendant in fi. fa. or any one else. It was not erroneous to overrule the demurrer. These rulings dispose of the cross-bill of exceptions.

■ While counsel for the plaintiff assigned error on the issuing of a rule nisi on the application originally presented to the court, in his brief he expressly abandons that exception. Therefore we have not for decision any question as to what is the correct procedure when such an application is presented. Compare *Williamson* v. *White,* 101 *Ga.* 276, 278 (28 S. E. 846, 65 Am. St. R. 302). In responding to the rule nisi Cullars filed a demurrer, an answer, and a cross-action in which affirmative equitable relief was sought, to wit, that title to the property be decreed in him, that the sheriff's deed be canceled, and for general relief. His demurrer was overruled, and in the first division of this opinion we have affirmed that ruling. What began as a simple application to the court by a purchaser at a sheriff's sale for an order to be placed in possession of the property was by the answer converted into a suit in equity to determine whether or not the sheriff's deed to the purchaser should be canceled. The bill of exceptions contains a recital to that effect, and counsel for both sides have so treated it in their briefs. We shall accordingly so deal with the case. The plaintiff's demurrer was based on the grounds, (1) that no tender was made of the amount paid by it for the land purchased at sheriff's sale; and (2) that the respondent had not offered to do equity and to give effect to all the equitable rights of his adversary respecting the subject-matter. Besides asserting facts tending to show that the levy was excessive and therefore that the sale was void, and an admission that the property was in his possession by, through, or under the person against whom the fi. fas. were issued, the defendant denied that the property had been properly advertised, denied that the plaintiff, Interstate Bond Company, was the highest and best bidder for cash at the sale, and denied its allegations as to the delivery of a deed to it by the sheriff. In view of the above, the demurrer was "speaking" in character, and was properly overruled.

■ The verdict on the issue submitted to the jury, whether or not the levy was excessive and void, was in favor of Cullars. Error was assigned on that part of the decree which fixed the amount of tax liens against the property which Cullars must refund to Inter-

state Bond Company. In framing a decree on a verdict, it is proper to examine the pleadings, admissions made by the parties, and all undisputed facts. *Law* v. *Coleman, 173 Ga.* 68, 76 (159 S. E. 679). These undisputed facts appear in this record: Four executions for State and county taxes were outstanding against J. T. Loflin for the years 1928, 1930, 1931, and 1932, as follows: (1) December 20, 1928, for the 1928 tax of $141.24, transferred on March 15, 1929, to F. E. Callaway, and entered, together with the transfer, on the general execution docket on March 15, 1929, transferred by Callaway to Interstate Bond Company on June 27, 1931; (2) December 20, 1930, for the 1930 tax of $150.52, transferred to Interstate Bond Company on June 30, 1931, and recorded, with the transfer, on the general execution docket July 3, 1931; (3) December 20, 1931, for the 1931 tax of $114.20, transferred to Interstate Bond Company, and recorded with the transfer on March 7, 1933; and (4) December 20, 1932, for the 1932 tax of $64.15, transferred to Interstate Bond Company, and recorded March 7, 1933. During the years covered by these executions Loflin returned for taxation the land involved, was in possession of it during these years, and was so in possession on February 7, 1933, when the executions for 1928 and 1930 were levied. The sale by the sheriff took place on March 7, 1933, the Interstate Bond Company being the purchaser. T. W. Cullars acquired his claim to the land after the sale thereof under the levy. In 1922 Loflin had placed thereon a security deed in favor of John Hancock Mutual Life Insurance Company, which in 1930 transferred its interest to the National Bank of Wilkes. The bank through its receiver secured judgment against Loflin, and the sheriff sold the land under the bank's judgment, the receiver being the purchaser at the sale. On October 20, 1936, the receiver conveyed the land to Cullars, who at the time knew that Interstate Bond Company had a deed thereto. Loflin returned for taxation, in 1931, 435 acres of land in Wilkes County of the value of $3045, which included the 294 acres involved in this section (not separately listed), and for the year 1932 the same quantity of land of the value of $2500. The record is silent as to the tax returns in 1928 and 1930. The plaintiff amended its application or petition, and prayed, in the event the levy be declared void for excessiveness, and its deed be declared void, that its tax liens be decreed to be

of full force and effect, and subsisting liens upon said land and recoverable therefrom by levy and sale of .a sufficiency thereof to satisfy the same, and that the judgment and decree be so molded as to give effect to all its rights and equities. On the trial the court submitted to the jury the one question whether the levy was excessive; and (as to the contention of the plaintiff that, if the sale was found to be void because of excessive levy, the court nevertheless decree that its tax fi. fas. were enforceable liens on the land) the court charged the jury in effect that any valid tax fi. fas. held by the bond company would be a valid lien on the property, and would have to be paid, but that that was a matter that would be taken care of by the decree. The court in this connection charged the jury that they were not concerned with the validity of the tax fi. fas., and further that the amount was not in dispute.

The decree treated the executions for the years 1928 and 1930 as unenforceable, under the Code § 110-1001, and declared that the levy and sale of the land thereunder was not such a bona fide effort to enforce the executions in court as contemplated by the Code. The decree further recited that section 92-5712 of the Code applied to the tax execution of 1932, and that of the $64.15, the amount of taxes assessed against the 435 acres of land for said year, Cullars was to pay $43.23 as his proportionate part.

Thus are presented two questions concerning the correctness of the decree. The first of these is, were the tax executions for the years 1928 and 1930 unenforceable because the seven-year period mentioned in the Code, § 92-7701, had elapsed, without bringing the same within either of the saving clauses of subsections 2 and 3 of § 110-1001. The second is, could the court give effect to section 92-5712, in relation to proportionate payment of taxes, in the absence of a prayer to that effect, when persons owning other portions of the land were not made parties. But we need not inquire whether section 110-1001 applies to tax executions, or, if so, whether the levy of a tax fi. fa., though subsequently adjudged void for excessiveness, is such a bona fide effort on the part of the plaintiff to enforce the execution as would bring it within the exception referred to in subsection 3 of § 110-1001, or whether § 92-5712 can be applied in the absence of proper pleadings and additional parties. Such inquiries are immaterial, because the enforcement of these tax executions is not being sought at law, and the rights

of the transferee thereof are to be measured by equitable principles, rather than by strict law. "He who would have equity must do equity, and give effect to all equitable rights in the other party respecting the subject-matter of the suit." Code, § 37-104. This is a codification of one of the oldest principles in equity jurisprudence. It has been referred to as the golden rule of equity, founded on that other golden rule proclaimed by the Great Teacher in the Sermon on the Mount: "All things whatsoever ye would that men should do to you, do ye even so to them; for this is the law and the prophets." Cullars, in his cross-action asking for cancellation, occupies the position of a plaintiff seeking affirmative equitable relief. In such a case equity will not aid him unless he makes provision for all the equitable rights of his adversary respecting the subject-matter of the suit. It is no answer for Cullars to say that in a suit at law some of these tax executions are stale, and for that reason unenforceable. "The court of equity refuses its aid to give to the plaintiff what the law would give him if the courts of common law had jurisdiction to enforce it, without imposing upon him conditions which the court considers he ought to comply with, although the subject of the condition should be one which the court would not otherwise enforce." 1 Pomeroy's Equity Jurisprudence (4th ed.), 714, § 385. The principle was applied by this court in *Kirkland* v. *Downing,* 106 *Ga.* 530 (32 S. E. 632), where a party sought specific performance, a purely equitable remedy, and where it was said: "In defense to the action, the defendant was permitted to allege, and to submit evidence to sustain his contention, that the time for such performance had not as yet arrived, for the reason that the plaintiff had expressly agreed to become answerable for certain obligations on the part of his son, which had not been met, and that the title to the land in controversy should be held by the defendant as security until his claims against the son had been fully satisfied. This agreement was not in writing, and the plaintiff therefore sought, but without success, to induce the trial court to ignore it, his position being that such an agreement comes within the operation of the statute of frauds, and is, in consequence, of no binding legal effect. That is to say, the plaintiff apparently recognized that unless he could avail himself of his purely technical, legal right to repudiate this alleged agreement, his prayer for the equitable relief sought would be pain-

fully lacking in moral support." Preliminary to the discussion, this court, after stating as above indicated the defense offered, said: "The question is therefore squarely presented, whether or not he is at liberty to insist that the court close its eyes to the unconscionable advantage it is alleged he thus seeks to gain over his adversary, to the end that he may procure its aid, regardless of the hardship which will be entailed upon the defendant." This court decided that the defendant was entitled to present as a defense the fact that there was an oral agreement that the title to the land in controversy should be held by the defendant as security until all his claims against the son had been fully satisfied. At law the agreement could not be made available because under the statute of frauds it was not binding; and yet, because the forum in which the plaintiff elected to test the righteousness of his complaint was one exercising equitable jurisdiction, this court decided, that, "Conceding that this evidence established no right, legal or equitable, which could be enforced in behalf of the defendant, it nevertheless was competent as going to show that the plaintiff was not entitled to the remedy he attempted to invoke," and refused to upset a verdict denying relief to the plaintiff because of the evidence in support of the defense above outlined. That decision illustrates the high morality of the law. In *Barnes* v. *Mays*, 88 *Ga.* 696, 698 (16 S. E. 67), Judge Bleckley said: "The general morality of the law is higher than many good people suppose. . . The standard it has in view is not merely conscience, but enlightened conscience." It is true that *Kirkland* v. *Downing*, supra, was a specific-performance case, and attention was called to the fact that specific performance is a remedy which "is never to be demanded as a matter of absolute right in either party" to a contract, "and a much stronger case is required to maintain the suit than to defeat it;" but the reasoning of the decision is applicable here, since it was founded on the principle as stated in Pomeroy on Contracts, § 175, as follows: "The principle that he who comes into the court seeking equity, that is, seeking to obtain an equitable remedy, must himself do equity, means not only that the complainant must stand in conscientious relations towards his adversary, and that the transaction from which his claim arises must be fair and just in its terms, but also that the relief obtained must not be oppressive nor hard upon the defendant, and must be so shaped

and modified as to recognize, protect, and enforce all his rights arising from the same subject-matter, as well as those belonging to the plaintiff." So the exceptions to the decree are not to be determined by an inquiry as to whether two of the tax executions were valid liens at the time of the trial, and, if so, whether, under the existing state of the record, the amount of the tax could be apportioned. At a time when all four of these executions were valid liens against this land, two of them were levied; the land was sold, and in the evidence is the sheriff's return of the proceeds of the sale. It recites that it was sold to Interstate Bond Company for $568, which sum was applied to satisfy the two fi. fas. which were levied, the tax executions for the years 1931 and 1932, and the costs of the levy, advertisement, and sale, the latter item amounting to $27.45, and the whole totaling $568.52. We are confronted with a record which shows that all the money paid by the purchaser, save $27.45, was applied to discharge liens subsisting at the time against the property involved. If the sale be void because of the excessive levy, Cullars is in equity and good conscience bound to reimburse Interstate Bond Company to the extent its money was used to pay off these liens that were valid and subsisting at the time of the sale. *Ray* v. *Atlanta Trust & Banking Co.,* 147 *Ga.* 265 (5), 271-2 (93 S. E. 418), is a direct authority for this ruling. See *Peoples Credit Clothing Co.* v. *Atlanta,* 173 *Ga.* 653 (160 S. E. 873) ; *Clark* v. *C. T. H. Corporation,* 181 *Ga.* 710, 717 (184 S. E. 592). It follows that even if the sheriff's deed be canceled for the reason urged, the decree should be so framed as to give the Interstate Bond Company the right to enforce its tax liens thereon in the amount of $541.07, with interest from the date of the sale.

The judge submitted to the jury but one question, whether or not the levy was excessive. Their verdict was in favor of Cullars, thus finding in effect that the levy was excessive, and that the sheriff's sale thereunder and the deed made by him were void by reason thereof. In the motion for new trial complaint is made that on the vital issue submitted the judge charged the jury that "The question for you to determine, and the only question for you to determine, is whether the levy on the tract of land was an excessive levy, that is, too much land levied on for the purpose of realizing the amount of the fi. fas.," and did not in connection

therewith or elsewhere in the charge explain to the jury what would constitute "too much land," or how the jury was to determine what would constitute "too much land," or what facts and factors should be considered by the jury to determine whether or not "too much land" was levied on. We think the complaint well founded. The judge should have given the jury some other instruction on the subject. They might well have inferred from the charge that the levy would be excessive if the officer levied on any amount of land more than barely enough to bring the amount of the executions which were levied. In *Hunt* v. *Lavender*, 140 *Ga.* 157 (78 S. E. 805), the judge charged the jury that "an excessive levy is where an officer levies on more property than is necessary to discharge the liens in his hands, with costs." Of that charge this court said: "This charge is not strictly accurate. The jury might have understood such instruction to mean that any excess value of the property over the amount of the liens and the costs would render the levy excessive and void; whereas the officer making the levy is allowed a reasonable margin—we might say, a liberal margin— between the amount of the writ which he is seeking to have satisfied and the value of the property levied upon (*Roser* v. *Georgia Loan &c. Co.*, 118 *Ga.* 181, 44 S. E. 994)."

It is insisted that the verdict was without evidence to support it; for while there was evidence which tended to show that the value of the property was largely in excess of the amount of the executions levied, and further testimony that the property was capable of subdivision, there was no proof that any one or more of the subdivisions was reasonably worth that amount. Since a new trial must be granted on account of the error in the charge pointed out, and the evidence on the next hearing may not be the same, we do not pass on the general grounds of the motion. Still other questions are made in the record, but those already ruled on are controlling.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*