COUNTY OF BIBB *et al. v.* WINSLETT, tax-collector, *et al.*

No. 13467. MARCH 15, 1941. ADHERED TO ON REHEARING, APRIL 3, 5, 1941.

*James C. Estes* and *Ellsworth Hall Jr.*, for plaintiffs in error.
*Jones, Jones & Sparks* and *Harry S. Strozier,* contra.

BELL, Justice. ■ We may say at the outset that in the view which we take of the case it will not be necessary to decide all of the ten or more questions which have been stated by counsel for the plaintiffs in error, since an adjudication of some of them will be controlling upon others, or will render a decision thereon unnecessary. As shown in the preceding statement, the board of commissioners of Bibb County issued a citation calling upon U. T. Winslett as tax-collector, and his surety, Fidelity & Deposit Company of Maryland, to appear before the board on a day specified, and make an accounting, and to show cause why an execution should not issue against them as provided by law for the several sums of money indicated in the citation. In so doing the county board followed the procedure provided for in section 9(a) of the act of 1933 (Code, § 89-818), and not the alternative procedure of issuing an execution ex parte as provided for by section 9(g), (Code § 89-824). The tax-collector and his surety did not answer the citation as directed, but went into the superior court with a suit for injunction, accounting, and other relief. In their petition the plaintiffs anticipated the specific nature of the various items referred to in the citation, and stated their contentions, legal and factual, concerning them. The defendants, Bibb County, the county board, and the individual members of the board, demurred to the petition both generally and specially. The demurrers were overruled on all grounds, and to this judgment as well as to a later judgment granting an interlocutory injunction the defendants excepted.

The first question for determination is whether the plaintiffs in suing in equity pursued the proper remedy. As against them, it is contended that they had an adequate remedy at law by answering the citation and thereafter filing a petition for the writ of certiorari in the event the issues were adjudged against them by the county

board; also, that even if they would not have had the remedy of certiorari, they still should have abided the statutory remedy of injunction, or affidavit of illegality, as provided by section 9(g), to which reference has just been made. For brevity and convenience we may refer to the remedies provided by this section as remedies at law, although one of them is a suit for injunction which may be filed and prosecuted under circumstances therein stated. The question then may be expressed in the usual form: Did the plaintiffs have an adequate remedy at law?

Before considering the procedural questions, let us restate briefly the substantive controversy. According to the petition, the following items were to be drawn in question by the citation: (1) The sum of $655.99, claimed by the county as an overpayment which it had made to the tax-collector on April 19, 1934, in behalf of the State, for commissions on tax sales, where the county was the purchaser. (2) The total sum of $1318.33, which the tax-collector had retained as commissions on the share of taxes accruing to the City of Macon in the years 1938 and 1939, under the intangibles-tax act of February 16, 1938, and which it was contended by the county the tax-collector should have paid into the county treasury under the salary act of 1924. (3) The sum of $33,119.50, representing a fee of fifty cents each on tax executions issued by the tax-collector during the years 1926 to 1940, inclusive; these fees having been retained by the tax-collector, and the contention of the county being that they also should have been paid into the county treasury. As to the first of these items, the petition raised no question as to *original* liability, and the respective contentions relating thereto, so far as decision thereon is necessary, may be stated and considered more logically in the second division of this opinion. The second and third items involve, among others, a construction of the salary act of 1924, the pertinent provisions of which have been quoted in the preceding statement, and the particular question is whether these items or either of them should be considered as "fees to be paid by the State" or "received from the State," which the tax-collector "should continue to receive" as part of his compensation under the salary act of 1924. As will be shown in the third and fourth divisions of this opinion, respectively, the claim presented by the county in the second item did not represent any compensation to which the tax-collector was entitled

from the State; but the third item did relate to such compensation.

We will now consider the question of remedy. It is contended by the plaintiffs that the portions of the act of 1933 relating to procedure after citation, and purporting to confer on the county authorities jurisdiction to render in such case an order or judgment which shall be conclusive upon all parties at interest, "unless an appeal be taken as herein provided," are unconstitutional and void as violating the due-process clauses of the State and Federal constitutions, for the reasons that the statute did not anywhere actually provide for an appeal as it thus appeared would be provided *therein*. Whether or not the petition sufficiently designated any portion of this statute as unconstitutional, we are of the opinion that in so far as the act purports to provide for a conclusive determination by such board of county commissioners, it is too vague and indefinite to be enforceable, and that this latter question is embraced within the four corners of the petition. It is at least within the general insistence that the plaintiffs did not have an adequate remedy at law. *Webb* v. *Newsom,* 138 *Ga.* 342 (75 S. E. 106) ; *Massachusetts Bonding & Insurance Co.* v. *Board of Commissioners,* 172 *Ga.* 409 (157 S. E. 459) ; *Board of Commissioners* v. *Massachusetts Bonding & Insurance Co.,* 175 *Ga.* 584 (165 S. E. 828). Some of the provisions of the act of 1933 have been quoted in the foregoing statement. As will be seen, section 9(e) declares in effect that such judgment or order shall be conclusive unless an appeal is taken "as herein provided." This also means, of course, that the judgment or order will not be conclusive where such an appeal is taken. The statute, however, nowhere provides for the appeal to which it refers as such an important factor. We can not accept the view that the term "appeal" as thus employed refers to either of the remedies provided for in section 9(g), because in that section the General Assembly was dealing, not with a citation, but with an ex parte execution, and, as to that *only,* provided for arresting the process and securing a *hearing* "by proceedings in equity, or, after levy, by affidavit of illegality." Manifestly this was not intended to apply where a hearing has already been had in response to citation. Since the statute clearly indicates that the conclusiveness of any order or judgment of the county authorities will depend on whether an appeal is taken "as herein

provided" and yet wholly fails to provide for such appeal, it is to this extent so indefinite and uncertain, or rather so incomplete, as to be nugatory and unenforceable. The question here is not whether an appeal is essential to due process, but is whether under the language and provisions of this statute the intention of the General Assembly may be .discovered and enforced.

In the circumstances it must be held that even if the plaintiffs had responded to the citation and the county authorities had undertaken to render an order or judgment affecting liability, nothing whatever would have been adjudicated thereby. Consequently the right so to appear and be heard would not have constituted such a remedy at law as would exclude equitable jurisdiction; and since there would have been no judicial determination, there could have been no review by certiorari. As to invalidity of statutes for un-certainty or incompleteness, see *Cook* v. *State,* 137 *Ga.* 486 (3) (73 S. E. 672) ; *Pickering* v. *Campbell,* 146 *Ga.* 636 (92 S. E. 74) ; *Winslett* v. *Case-Fowler Lumber Co.,* 173 *Ga.* 539 (160 S. E. 384) ; *Board of Tax-Assessors* v. *Catledge,* 173 *Ga.* 656 (160 S. E. 909) ; 59 C. J. 601, § 160. But even if this statute might be construed to mean that an order or judgment of the commissioners in such. case, though rendered after citation and hearing, could still be challenged by "proceedings in equity" or by affidavit of illegality under section 9(g), it would not necessarily follow that the plaintiffs should have been denied the right to sue in equity immediately on issuance of the citation. None of the provisions of the act of. 1933 can be taken as an amendment or qualification of the Code, § 37-120, where it is declared that "a mere privilege to a party to sue at law, or the existence of a common-law remedy not as com-plete or effectual as the equitable relief, shall not deprive equity of jurisdiction." In view of this principle, the plaintiffs were not under the necessity of going through a trial before the county commissioners, as a condition precedent to seeking equitable re-lief, when the later trial in equity would involve only a de novo investigation of the same issues which had been heard and considered by the county commissioners. Any other view would require useless expenditure of time and effort, besides unnecessary delay and expense. Nor can the provisions as to hearing and accounting. before the county commissioners be treated as establishing an administrative remedy to be first pursued; for clearly no such rem-:

edy was intended by. the General Assembly. Cf. *City Council of Augusta* v. *Loftis,* 156 *Ga.* 77 (118 S. E. 666). We conclude that the petition was not subject to demurrer on the ground that the plaintiffs had an adequate remedy at law, or on the ground that the suit was premature.

■ Properly construed, the petition admits that the tax-collector himself is liable for the sum of $655.99 claimed by the county as an overpayment which it made to the tax-collector on April 19, 1934, in behalf of the State for commissions on tax sales. The tax-collector, it is alleged, is ready, willing, and able to pay this sum, except that he contends that the county is liable to him in a larger amount. The petition contained no other admission of liability by either the tax-collector or the surety company. Was the petition subject to demurrer on the ground that the item of $655.99 had not been paid or tendered to the county, and was not tendered in the suit as filed? It is insisted by the defendants that the petition should have been dismissed under the rule that he who would have equity must do equity. We do not think that the petition was subject to dismissal, under this rule, for the failure of the plaintiffs to pay or tender the sum stated. In paragraph 11 as amended, it was alleged that the county was due the tax-collector $9000 or other large sum for commissions on tax sales at which the county became the purchaser (Ga. L. 1937, pp. 446, 448; *Newsom* v. *Dade County,* 177 *Ga.* 612, 171 S. E. 145; *Newsom* v. *Dade County,* 180 *Ga.* 403, 179 S. E. 89), and in reference thereto the plaintiffs prayed for an accounting. In these circumstances the petition was not deficient because the amount admitted by the tax-collector to be due was neither paid nor tendered. This question calls for consideration of paragraphs 10 and 11 of the petition, and of an amendment to paragraph 11; also the demurrer to paragraph 10 of the petition (paragraph 11 of the demurrer), and to original paragraph 11 of the petition (paragraph 12 of the demurrer). (The parts of the petition and of the demurrers here mentioned are identified by reference to the numbered paragraphs in the preceding statement.) Whether or not the Code, § 92-8201, as amended by the act of 1937, supra, would require the county authorities to draw their warrant in favor of the tax-collector in payment of commissions on the State's share of the taxes until after the property "is redeemed in the manner provided by law

or is resold by the county authorities," paragraph 11 as amended alleged in effect that the county was liable to the tax-collector for commissions "on account of State taxes collected by the defendants," and repeated the language here quoted several times. If the taxes could not be considered as collected by the county until after redemption or resale of the property, the paragraph as a whole, including the amendment, impliedly and sufficiently alleged such sale or redemption as against that part of the demurrer to original paragraph 11 asserting that "There is no legal obligation upon the part of the defendants or any of them to pay any sum to the said Winslett on account of any taxes that may have been collected by the defendants." That part of the demurrer which was special in nature and merely called for specification or particularity of items was cured by the amendment. If the taxes were in fact collected by the county authorities, as the allegations of the petition were sufficient to show as against the demurrer interposed, then it was the duty of the county authorities to pay to the tax-collector the amount of commissions due on the State's share. Such duty and the amount of commissions thus payable to the tax-collector, as compensation to a public officer, both being fixed and determined by law, it was not incumbent upon the tax-collector to present his claim within twelve months in order to prevent it from becoming barred under section 23-1602, supra. See, in this connection, *Gamble* v. *Clark*, 92 *Ga.* 695 (19 S. E. 54) ; *Sammons* v. *Glascock County*, 161 *Ga.* 893 (3) (131 S. E. 881) ; *Tucker* v. *Shoemaker*, 149 *Ga.* 250 (99 S. E. 865) ; *Rogers* v. *Citizens Bank of Douglas*, 149 *Ga.* 568 (5) (101 S. E. 674) ; *Culberson* v. *Watkins*, 156 *Ga.* 185 (119 S. E. 319) ; *Freeney* v. *Pape*, 185 *Ga.* 1 (4) (194 S. E. 515). The amount was not uncertain and contingent on varying acts of the officer, as in *Baggett* v. *Barrow*, 166 *Ga.* 700 (2a) (144 S. E. 251).

Whether or not it was the legal duty of the tax-collector as a public officer to refund the overpayment without waiting for an accounting, the question as presented is whether his failure to do so should result in a dismissal of the petition under the rule that he who would have equity must do equity. Considering the nature of the item in question and all of the allegations in reference thereto, we can not say as a matter of law that the petition is fatally defective as failing to show a willingness on the part of the plaintiffs

to do equity with respect to the item in controversy. So it must also be held that paragraph 10 of the petition, in which the tax-collector admitted liability for this item, was not subject to demurrer for the reasons urged. See Code, § 37-307; *Pope* v. *Thompson,* 157 *Ga.* 891 (2) (122 S. E. 604). On the question of tender, the defendants rely upon *Snell* v. *Spalding Foundry Co.,* 180 *Ga.* 582 (2) (180 S. E. 218), and other decisions. So far as that particular decision is concerned, it was not concurred in by all the Justices, and was criticised in *Zugar* v. *Scarbrough,* 186 *Ga.* 310 (197 S. E. 854). On further reflection, we are of the opinion that so much of it as relates to the question here under discussion is unsound and should not be followed. The ruling which we now make is deemed to accord with the other decisions relied on by counsel for the defendants. As to the particular item under discussion, the surety company invoked the three-year limitation provision of section 11 of the act of 1933 (Ga. L. 1933, pp. 78, 93; Code, § 89-832). It is insisted by the defendants that the company could not as a plaintiff *in equity* defeat this claim by relying upon the statute of limitations. In view of what has been said above, we need not pass upon this contention; although it may be stated in this connection that a somewhat similar contention was sustained by this court in *Interstate Bond Co.* v. *Cullars,* 189 *Ga.* 283, 290 (5 S. E. 2d, 756). In that case, however, the ruling was made as against a party who was seeking the equitable relief of cancellation, which may or may not afford a basis for a distinction. In *United States Fidelity & Guaranty Co.* v. *Toombs County,* 187 *Ga.* 544 (6) (1 S. E. 2d, 411), it was held that under the Code, § 89-832, a surety on an officer's bond had the right to plead, as a reason why an execution should not proceed against it, that the cause of action accrued more than three years before the date of such execution. But as to that case it may be observed that the surety was merely following the procedure expressly prescribed by the act of 1933; an execution having been issued, whereas here there was only a citation. As to application of the equitable maxim in such case, see 21 C. J. 176, § 153. These latter remarks are made only for the purpose of calling attention to certain features of the two cases last mentioned, and are not intended as an expression of opinion, or even as an intimation, as to whether, if the present petition had not asserted a counter claim and prayed for an accounting, the

surety could have avoided the necessity of tender by pleading the statute of limitations, the suit having invoked ordinary equitable jurisdiction and not having been brought under the express provisions of a statute.

For the reasons stated above, the petition was not subject to the demurrer for failure of either plaintiff to do equity. In this view we merely assume, without deciding, that failure of the tax-collector to refund an overpayment of commissions made to him by the county would constitute a breach of his bond for which the surety would be liable, decision on such being unnecessary. In reference thereto, see *Board of Education of Miller County* v. *Fudge*, 4 *Ga. App.* 637 (62 S. E. 154); *Maryland Casualty Co.* v. *Salmon*, 45 *Ga. App.* 28 (163 S. E. 285).

■ Coming now to the real merits of the controversy, we have before us two matters about which the parties assert opposite legal conclusions. In this connection we will consider first the item of $1318.33 which the tax-collector retained and still claims as commissions on the share of the taxes accruing to the City of Macon in the years 1938 and 1939, under the intangibles-tax act. Ga. L. Ex. Sess. 1937, 1938, pp. 156-172, sec. 10; Code Ann., 1939,. Cumulative Part, § 92-144. It is insisted that since this tax is levied directly by the General Assembly and is based on returns made to the State Revenue Commissioner and on assessments by him, it is a State tax and the commissions allowed to the tax-collector for collecting the same should. be classed as compensation paid by or received from the State within the meaning of the salary act of 1924. If this contention is correct, the tax-collector was. not accountable for the sum here in question; otherwise he was. accountable and should have paid the same into the county treasury. While it is true that the tax on intangibles is levied and collected in the manner stated, it does not follow that all of it should be. classed as a State tax. The statute refers in several instances to the different shares, such as the State's share, the county's share, and so forth; and in section 11(e) we find the following characterization: "The tax levied in section 3 hereof [which is the tax herein question] *shall be deemed to be levied by the participating taxing authorities* in the proportion that the millage rate of each participating taxing authority bears to the aggregate millage rate of all the participating taxing authorities." (Italics ours.) Ga. L..

Ex. Sess. 1937, 1938; Ga. Code Ann., 1939 Cumulative Part, § 92-151. So in providing for this tax the legislature at the same time effectually classified it, and by that classification only the State's share can be considered as a State tax. It necessarily follows that the commissions allowed to tax collectors for collecting other portions of the tax could not be treated as compensation from the State, and that under the salary act it was the duty of the tax-collector of Bibb County to pay such commissions into the county treasury, as other "public moneys belonging to said county." The plaintiffs' allegations in reference to commissions for collection of taxes under the intangibles-tax act as to shares other than the State's share were therefore insufficient in law, and to this extent the demurrers should have been sustained.

■ The power of a county tax-collector to issue an execution for taxes is a power delegated by the State as the sovereign, and so, in performing such act the tax-collector is exercising solely a State function; and this is true notwithstanding the act as thus performed under State authority may be done in part for the benefit of the county or its citizens. Consequently the tax-collector, in issuing a tax execution, acts as an agent of the State, and in the absence of other classification by the law-making body the prescribed fee for the service should be considered as a State fee, or as compensation from the State, within the meaning of the salary act. See *Gladney* v. *Deavors,* 11 *Ga.* 79, 81; *Bassett* v. *Governor,* 11 *Ga.* 207, 218. It is true that section 92-8002 declares that no tax-collector shall receive cost on such an execution unless the same shall be collected from the defendant. This, however, is a mere limitation on the State's liability, and does not serve to alter the legal classification. Where the fee for issuing an execution is paid by the defendant in execution, that is, by the taxpayer, it is in law paid to the State through the tax-collector as the State's agent, and is then retained by such agent under authority of law as compensation for his service. For analogies relating to attorney's fees, see *Mohr-Weil Lumber Co.* v. *Russell,* 109 *Ga.* 579 (34 S. E. 1005) ; *Walden* v. *Walden,* 171 *Ga.* 444 (2) (155 S. E. 919) ; *Thomas* v. *Smith,* 185 *Ga.* 243 (2) (194 S. E. 502) ; *Carson* v. *Blair,* 31 *Ga. App.* 60 (121 S. E. 517).

From what has been said, the tax-collector was entitled to retain as "compensation from the State" all of the fees which he collected

from taxpayers for issuing tax executions, and the petition was meritorious in so far as it assailed the third item of the citation. The court properly overruled all grounds of demurrer relating to such part or parts of the petition as claimed for the tax-collector the right to the fees for issuing tax executions; nor was it error to overrule the grounds of general demurrer to the petition as a whole.

■ The defendants also assigned error upon the judgment granting an injunction. Under the pleadings and the evidence and the applicable law, the court did not err in granting such injunction.

Although we have held in the third division that the court erred in not sustaining the demurrer as to certain parts of the petition, this will not affect the order granting an interlocutory injunction, since the only purpose of the injunction was to restrain the defendants from proceeding under the citation. The judgment overruling the demurrer will be affirmed in part and reversed in part; but the judgment granting an interlocutory injunction will be affirmed in toto.

*Judgment reversed in part and affirmed in part. All the Justices concur.*